AUTO OWNERS INSURANCE COMPANY, Appellant,

v.

NORTHSTAR MUTUAL INSURANCE COMPANY, Respondent,

Bradley Rice, et al., Defendants,

Colleen Zimny, et al., Respondents.

No. 49300.

Supreme Court of Minnesota.

June 22, 1979.

Rehearing Denied July 20, 1979.

Schmidt, Thompson & Thompson and J. E. Thompson, Willmar, for appellant.

Arvesen, Donoho, Lundeen, Hoff, Svingen & English and Norman D. Arvesen, Fergus Falls, for Northstar Mut. Ins. Co.

George Gaffaney, Alexandria, for Zimny, et al.

TODD, Justice.

Stuart Mackechney was operating a boat owned by Bradley Rice. There was a collision with another boat. Auto Owners Insurance Company (Auto Owners) insured Mackechney under a homeowner's policy. Northstar Mutual Insurance Company (Northstar) insured Rice as owner of the boat under a comprehensive liability policy which also covered Mackechney as a permissive user. Both policies contained an "ex-

cess insurance" clause.[1] The trial court determined that Auto Owners afforded primary coverage. We reverse.

In July 1976, a boat operated by Stuart Mackechney collided with another boat on Lake Darling in Douglas County, Minnesota. Mackechney was driving the boat with the permission of its owner, Bradley Rice. As a result of the collision two passengers in the boat driven by Mackechney, and owned by Rice, brought an action for personal injuries against Mackechney, Rice, the driver of the other boat, and the owner of the other boat. Mackechney is the beneficiary of insurance under two policies, one written by Auto Owners and one written by Northstar.

The policy written by Auto Owners was issued to Mackechney as the named insured. It is a homeowner's policy. The policy has no specific endorsement for boats, but it does have a provision covering the homeowner for personal liability. This coverage is "excess" over any other valid and collectible insurance available to the insured. The policy written by Northstar was issued to Rice, the owner of the boat, rather than Mackechney, the operator of the boat. This policy is for comprehensive liability insurance. The policy excluded outboard motors having more than 25 horsepower unless otherwise scheduled on the policy. Rice had obtained a specific endorsement for the 65-horsepower motor powering the boat, and paid an additional premium of $8 for the endorsement. Although Mackechney was not a named insured under the Northstar policy, he was an additional insured because the policy covered individuals using the scheduled watercraft with the permission of the named insured. The Northstar policy, like the Auto Owners policy, contained an "excess" insurance clause.

Because of the conflicting excess insurance clauses, Auto Owners brought an action for declaratory judgment, alleging that the Northstar coverage was primary and the Auto Owners' coverage was excess. The trial court concluded that Auto Owners afforded primary coverage, and Auto Owners appealed. This appeal raises the following issues:

(1) Where two policies of insurance covering a boat accident contain excess insurance claims, is primary coverage determined by the "closeness to the risk" test?

(2) If the test of primary coverage is determined by the "closeness to the risk" test, which of the two policies is closest to the risk?

■ 1. This court in *Integrity Mutual Ins. Co. v. State Automobile & Cas. Underwriters Ins. Co.*, 307 Minn. 173, 239 N.W.2d 445 (1976), set forth the legal principles to be applied when two insurance policies covering an accident contain conflicting excess insurance clauses. We there stated (307 Minn. 174, 239 N.W.2d 446):

"Often two or more companies would be fully liable for a loss but for their respective other insurance clauses, and many times those clauses conflict in their provisions. When it is clear that two or more companies are among themselves liable to the insured for his loss but the apportionment among the companies cannot be made without violating the other insurance clause of at least one company, then the courts must look outside the policies for rules of apportionment. One approach, known as the *Lamb-Weston*

---

1. The excess insurance clause in the Auto Owners policy states as follows in part A, paragraph 7b: "With respect to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any motor vehicle, recreational motor vehicle or watercraft to which this policy applies, this insurance under Coverage E—Personal Liability, shall be excess insurance over any other valid and collectible insurance available to the Insured."

The excess insurance clause in the Northstar policy is virtually identical to that contained in the Auto Owners' policy. Part VIII, paragraph C of the Northstar policy states: " * * * With respect to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any motor vehicle, recreational motor vehicle or watercraft to which this insurance applies, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured."

doctrine, is to require, when 'other insurance' clauses conflict, that the loss be prorated among the insurers on the basis of their respective limits of liability. *Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.,* 219 Or. 110, 341 P.2d 110 [346 P.2d 643] (1959).

"The approach of the Minnesota court has traditionally been more complex than the *Lamb-Weston* doctrine. In *Federal Ins. Co. v. Prestemon,* 278 Minn. 218, 231, 153 N.W.2d 429, 437 (1967), we stated that the better approach is to allocate respective policy coverages in light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy. The Minnesota courts examine the policies and determine whether the insurers are concurrently liable on the risk, or one is primarily liable and another only secondarily liable. If they are concurrently liable, each must pay a pro rata share of the entire loss. *Woodrich Const. Co. v. Indemnity Ins. Co. of North America,* 252 Minn. 86, 89 N.W.2d 412 (1958); *Commercial Cas. Ins. Co. v. Hartford Accident & Ind. Co.,* 190 Minn. 528, 252 N.W. 434, 253 N.W. 888 (1934). On the other hand, if one insurer is primarily liable and the other only secondarily, the primary insurer must pay up to its limit of liability, and then the secondary insurer must pay for any excess up to its own limit of liability. *Eicher v. Universal Underwriters,* 250 Minn. 7, 83 N.W.2d 895 (1957). In addition, some coverages may be neither primary nor secondary, but tertiary in their application.

"The nub of the Minnesota doctrine is that coverages of a given risk shall be 'stacked' for payment in the order of their closeness to the risk. That is, the insurer whose coverage was effected for the primary purpose of insuring that risk will be liable first for payment, and the insurer whose coverage of the risk was the most incidental to the basic purpose of its insuring intent will be liable last. If two coverages contemplate the risk equally, then the two companies providing those coverages will prorate the liability between themselves on the basis of their respective limits of liability."

See, also, *Olson v. The Hertz Corporation,* 270 Minn. 223, 133 N.W.2d 519 (1965).

■ This language seems to clearly require that the "closeness to the risk" test be applied in this case. Northstar argues, however, that this test is limited to situations involving automobile insurance policies. This argument is without merit.

Northstar argues that this court should reject this test and determine primary coverage according to the underlying liability of the boat owner and boat operator. In essence, Northstar's argument is based on the "primary tortfeasor" doctrine, in which primary coverage is determined by which insurer has the primary tortfeasor as the named insured. This court, long ago, rejected the primary tortfeasor doctrine as a means of resolving conflicts in "other insurance" clauses. See, *Woodrich Construction Co. v. Indemnity Insurance Co.,* 252 Minn. 86, 89 N.W.2d 412 (1958).

Although the "closeness to the risk" test apparently has not been previously applied in Minnesota to disputes concerning boat insurance, there is nothing in the cases involving insurance to indicate that the doctrine is limited to automobile insurance. Moreover, there is nothing peculiar about the excess insurance clauses in automobile insurance which would warrant a limitation on the doctrine.

This conclusion is supported by the case of *Bettenburg v. Employers Liability Assurance Corp. Ltd.,* 350 F.Supp. 873 (D.Minn.1972). That case involved questions of architecture insurance coverage, one of which concerned the application of "other insurance" clauses in two policies covering the liability of certain architects. The Minnesota Federal District Court resolved the conflict in the "other insurance" clauses by applying Minnesota law. The court said (350 F.Supp. 877):

"Admittedly, most of the Minnesota cases which deal with this problem involve conflicting policies of automobile

insurance, and none of the Minnesota cases are factually similar to the situation presented by the instant case. These factual distinctions, however, do not require a different approach to the problem. The principle to be applied remains the same: attempt to ascertain 'the total policy insuring intent' of the respective policies, and allocate the liabilities accordingly."

We hold that the question of primary coverage should be answered by applying the "closeness to the risk" test set forth in the Integrity Mutual case.

2. The trial court concluded that Auto Owners was the primary coverage. In its memorandum, the court indicated that it so held because of the absence of a "safety responsibility act" applicable to watercraft.[2] It would appear that the trial court assumed that in Minnesota the "closeness to the risk" doctrine applied only to motor vehicle accidents. Because we have held that this doctrine also applies to boat accidents, we next must determine which of the two policies is closest to the risk.

In *Federal Insurance Co. v. Prestemon,* 278 Minn. 218, 229, 153 N.W.2d 429, 436 (1967), we set forth criteria for making such a determination. From this we can infer certain factors of general applicability as follows:

(1) Which policy specifically described the accident-causing instrumentality?

(2) Which premium is reflective of the greater contemplated exposure?

(3) Does one policy contemplate the risk and use of the accident-causing instrumentality with greater specificity than the other policy—that is, is coverage of the risk primary in one policy and incidental to the other?

Applying these factors to this case, it is clear that Northstar has primary coverage. The accident-causing instrumentality was specifically described in its policy, wherein a special endorsement scheduled the boat owner's "Mercury O.B., 65 H.P."

Auto Owners' policy contained no description of the boat or motor. Second, Northstar charged an additional $8 premium specifically for coverage on the 65 h.p. boat and motor. This is unlike the Auto Owners' policy, wherein no severable premium for boat insurance was charged. Hence, the premium charged by Northstar specifically contemplates the exposure for a boat accident. Finally, the policy issued by Northstar was specifically designed to insure against comprehensive liability for the accident, whereas the policy issued by Auto Owners was primarily designed to afford homeowners' protection and therefore the coverage for personal liability arising out of the use of a watercraft was only incidental to the main purpose of the Auto Owners' policy.

Based on these considerations, we hold that Northstar's insurance affords primary coverage and Auto Owners' insurance affords excess coverage.

Reversed.

---

2. The trial court apparently overlooked Minn.St. 361.13, which does establish vicarious liability for boat owners.