INTERSTATE FIRE & CASUALTY
COMPANY, Appellant,

v.

AUTO–OWNERS INSURANCE
COMPANY, Respondent.

No. C5–87–1877.

Court of Appeals of Minnesota.

March 22, 1988.

Review Granted May 25, 1988.

Thomas E. Peterson, Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellant.

Kevin S. Carpenter, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and SEDGWICK and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

Interstate Fire & Casualty Company ("Interstate") appeals a summary judgment granted to respondent Auto–Owners Insurance Company ("Auto–Owners"). The trial court granted summary judgment, deciding that the business pursuits exclusion in the Auto–Owners policy excluded coverage for the accident and because the Interstate policy was "closest to the risk." We reverse and remand.

## FACTS

On March 28, 1977, Kenneth DeCent was injured in an accident during physical education class at Crosby–Ironton Junior High School. Jim Leitch, a 12th grade student, was one of three student helpers or assistants in the class and was supervising DeCent when he was injured.

DeCent was injured when he and Leitch were scuffling as they ran after a basketball. DeCent broke his neck during the incident, and he is now quadriplegic.

DeCent's parents sued several parties, including Leitch and Independent School District 182, which had an umbrella policy with Interstate. The case was settled with all defendants. The settlement was funded by the school's primary carrier, Continental Insurance Company, and by its excess carrier, Interstate.

Interstate then sued Leitch's homeowner's carrier, Auto–Owners, for reimbursement of the settlement amount Interstate paid to DeCent. Auto–Owners moved for summary judgment, arguing that the business pursuits exclusion of its policy applied and that Interstate's policy was closer to the risk than the Auto–Owners policy. Judgment was entered for Auto–Owners and Interstate appeals.

## ISSUES

1. Did the trial court err in concluding that the business pursuits exception in the

Auto–Owners policy prevented coverage for the injuries Kenneth DeCent suffered during his physical education class?

2. Did the trial court err in concluding that the Interstate and Auto–Owners policies conflicted, and that the Interstate policy was closest to the risk?

### ANALYSIS

### I.

■ Auto–Owners contends that Leitch's activity at the school was a "business pursuit" and that coverage was therefore excluded under its policy, which states:

This policy does not apply:

1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:

\* \* \* \* \* \*

d. to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits;

The term "business" is defined in the policy as:

(1) a trade, profession or occupation, including farming, and the use of any premises or portion of residence premises for any such purposes; and

(2) the rental or holding for rental of the whole or any portion of the premises by an insured;

A policy clause should be construed with reference to the particular facts of each case. *Farmers Insurance Exchange v. Sipple,* 255 N.W.2d 373, 375 (Minn.1977).

■ The business pursuits exclusion normally applies to a type of activity in which persons regularly engage for the purpose of earning a livelihood, or for gain such as a trade, profession, or occupation. *Allied Mutual Casualty Co. v. Askerud,* 254 Minn. 156, 163, 94 N.W.2d 534, 539–40 (1959). To preclude coverage under the business pursuits exclusion, the act must be solely referable to the conduct of the business. *Reinsurance Association of Minnesota v. Patch,* 383 N.W.2d 708, 712 (Minn.Ct.App.1986).

■ At the time of the accident, Leitch was not engaged in the school activity for the purpose of earning a living because he did not receive wages in exchange for the supervision. In addition, the nature of the particular act and its relationship to the business must be examined. *Sipple,* 255 N.W.2d at 375, *quoting Milwaukee Mutual Insurance Co. v. City of Minneapolis,* 307 Minn. 301, 309, 239 N.W.2d 472, 476 (1976). "Personal acts, such as pranks," do not become part of a business pursuit and fall outside of the coverage merely because they are performed during business hours and on business property. *Id.* In order for an act to be considered part of a business pursuit, it must be an act that contributes to or furthers the interest of the business, and one that is peculiar to the business. *Id.* Even if the trial court properly concluded that Leitch's activities could be construed as a "business pursuit," Leitch's homeowner's insurance policy would still provide coverage for bodily injury or property damage sustained by DeCent because the incident causing the injury was not related to a business pursuit: two young men wrestling over a basketball is not an activity ordinarily incident to business pursuits.

### II.

■ Conflicting clauses in insurance policies have given rise to the difficult question of how to apportion liability between two insurers of the same risk. *See Integrity Mutual Insurance Co. v. State Automobile & Casualty Underwriters Insurance Co.,* 307 Minn. 173, 239 N.W.2d 445 (1976). The solution in Minnesota is to stack coverages for payment in the order of their closeness to the risk. *Id.* at 175–76, 239 N.W.2d at 447.

However, this doctrine seems to apply only to two insurance companies in the primary-excess situation. Underlying carriers are said to be primary and the umbrella carrier is said to be only excess, which accounts for their relatively modest premiums. *See Jostens, Inc. v. Mission Insurance Co.,* 387 N.W.2d 161, 165 (Minn. 1986).

The grant of coverage in the Auto–Owners policy provides:

This company agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies * * *.

This coverage is primary in nature and nowhere does Auto–Owners condition its obligations upon exhaustion of any underlying insurance.

In contrast, Interstate's policy is clearly denominated as an umbrella policy and its insuring agreements are tied to underlying coverages. Interstate extends coverage to its insureds for damages on account of, among other things, personal injuries. However, the policy clearly sets out that it is only liable for loss in excess of underlying insurance coverage.

 DeCent's claim for personal injury falls squarely within both grants of coverage. The application of coverages to the claim should be governed by those grants of coverage. Since Auto–Owners has not conditioned its duty to indemnify Leitch upon any underlying insurance, whereas Interstate has done precisely that, the primary coverage should pay first. The presence of another primary policy, the policy of Continental Insurance Company, would allow Auto–Owners to apply the "other insurance" provisions of the two primary policies to coordinate the payments between them. Such coordination is a moot point, however, because the settlement in this case exceeds the combined primary limits.

Where the grants of coverage themselves apply at different levels, there is never the need to coordinate through the use of "other insurance" provisions. Commentators have noted that umbrella policies operate at a level over and above primary policies.

The courts are not ignorant of the desirable socio-economic consequences attendant upon the providing of umbrella or catastrophic coverages. They recognize that this involves no attempt upon the part of a primary insurer to limit a portion of its risk by describing it as "ex-cess," nor the employment of devices to escape responsibility. Therefore, *umbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses.*

8A Appleman, *Insurance Law and Practice,* § 4909.85 (1981) (emphasis added) (footnotes omitted).

The Interstate policy provides that if there is other insurance available to an insured covering a loss also covered by its policy, the policy is in excess of and does not contribute with the other insurance. The policy states as follows:

Other insurance: If other valid and collectible insurance *with any other insurer* is available to the insured covering a loss also covered by this policy (other than insurance that is specifically in excess of the insurance afforded by this policy) the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

(Emphasis added.)

 The Auto–Owners policy, in contrast, states that if there is other insurance available, it will either contribute by equal shares or will pro rate its coverage in conjunction with the other insurance available. When an excess clause is inserted in a liability insurance policy, the obvious intent of the insurer is that the policy will afford only secondary coverage when the loss is covered by "other insurance." On the other hand, contracts of insurance that contain provisions limiting the policy to pro rata liability in the event of concurrent coverage are usually intended to become effective only when other valid and collectible primary insurance coverage is available. *See Comment, Concurrent Coverage in Automobile Insurance,* 65 Colum.L.Rev. 319, 328 (1965); *Jones v. Medox, Inc.,* 430 A.2d 488, 491 (D.C.App.1981); *see generally* 12 A.L.R. 4th 993 (1982).

Thus, the standard phrase "other valid and collectible insurance" means other valid and collectible *primary* insurance. It follows, then, that the policy containing the pro rata clause is the other valid and collectible primary insurance that triggers application of the excess clause in the second policy. The excess clause in the second policy, therefore, is given full effect and that carrier is liable only for the loss after the primary insurer has paid up to its policy limits. The policy containing the excess clause, however, is not considered "other valid and collectible primary insurance" for the purpose of triggering the operation of the pro rata clause, because when a stated contingency occurs, that is, when there is other valid and collectible primary insurance available to the insured, the policy containing the excess clause becomes secondary coverage only. *See Medox*, 430 A.2d at 491 (and cases cited therein). Accordingly, the majority of jurisdictions that have considered this issue have held that a pro rata "other insurance" clause and an excess "other insurance" clause are not in conflict. *Id.*

Finally, the dissent asserts that to apply the "customary rules for the apportionment [of liability] between automobile insurers to this institutional personal injury action results in unfairness." Such unfairness apparently arises by requiring that a homeowner's policy must provide coverage for injuries sustained on school property. However, a homeowner's policy generally does not limit its liability coverage to injuries sustained at home. Contrary to the dissent's conclusion, this incident should be considered one of the risks contemplated under the Auto–Owners policy. Even if we could agree that the result reached here is unfair, we cannot ignore the plain language of these insurance policies, as discussed in our analysis above.

### III.

Auto–Owners argues that in the event its policy is declared primary insurance, Interstate is not entitled to summary judgment because negligence has not been determined. We agree. The case must be re-manded for further proceedings on this issue.

### DECISION

Reversed and remanded.

SEDGWICK, Judge (concurring in part, dissenting in part).

I concur with the majority that the business pursuits exclusion does not apply here but I dissent regarding the apportionment of liability among the insurers. To apply the customary rules for apportionment between automobile insurers to this institutional personal injury case results in unfairness. I urge that liability be apportioned by analyzing the overall scheme of coverage and determining which coverage was effected for the primary purpose of insuring that risk and which coverage of the risk is incidental to the basic purpose of the insuring intent. *See Auto Owners Insurance Co. v. Northstar Mutual Insurance Co.*, 281 N.W.2d 700, 703 (Minn.1979).

Interstate, the umbrella carrier, contracted with the school district to provide insurance coverage beyond the coverage extended by Continental Insurance, the school's primary insurance carrier. The umbrella policy contemplated coverage for accidents and injuries sustained on school property during school events. In contrast, the Auto–Owners policy was a homeowners policy providing coverage for accidents and injuries incidental to home ownership. Risk of injury during gym class is one of the reasons the school district purchased liability insurance while coverage of a school accident is only incidentally related to the contemplated coverage of the Auto–Owners policy. Requiring Auto–Owners to assume primary liability for a school accident extends the contemplated risk under a homeowners policy beyond the bounds of fairness.

In an automobile accident, the "closeness to the risk" analysis works well because the accident-causing instrumentality and the contemplated risk are the same. The accident-causing instrumentality is the vehicle and the contemplated risk for insurance is an automobile accident. Here, the

accident-causing instrumentality and the contemplated insured risk are different. Although there has been no determination of negligence, the difference in the insured risks is clear. The intent of the umbrella policy was to provide coverage to the school in catastrophes such as this while the primary purpose of Auto–Owners policy was to protect Leitch's parents as homeowners. Because of the difference in the contemplated risks of coverage, I would hold that liability be apportioned first to Interstate to the limits of its umbrella policy, and then to Auto–Owners to the limits of the homeowners policy.