INTERSTATE FIRE & CASUALTY COMPANY, Respondent,

v.

AUTO–OWNERS INSURANCE COMPANY, Petitioner, Appellant.

No. C5–87–1877.

Supreme Court of Minnesota.

Dec. 9, 1988.

Kevin S. Carpenter, Quinlivan, Sherwood, Spellacy & Tarvestad, St. Cloud, for appellant.

Kay Nord Hunt, Thomas E. Peterson, Minneapolis, for respondent.

YETKA, Justice.

The dispute in this case is between two insurance companies as to which one is the primary insurer responsible to pay damages to Kenneth DeCent. DeCent, a student at a public high school, was injured during a physical education class taught by David Trefethen and assisted by Jim Leitch, a high school senior. The school district had general liability insurance with Continental Insurance Company and umbrella liability insurance with respondent, Interstate Fire & Casualty Company. The injured plaintiff, Kenneth DeCent, settled for the Continental policy limits of $500,000 and an additional $310,863 paid by Interstate. Leitch was covered also by his father's homeowners liability policy written by appellant, Auto–Owners Insurance Company. Interstate claims reimbursement from Auto–Owners for the $310,863 it paid towards the settlement. The trial court found for Auto–Owners, holding that Interstate should pay as it was "closest to the risk." The court of appeals reversed and found that Auto–Owners had the primary liability and should thus reimburse Interstate.

We reverse the court of appeals and reinstate the grant of summary judgment for Auto–Owners awarded by the trial court.

The facts of this case are basically undisputed. On March 28, 1977, Kenneth DeCent, a junior high school student, was injured in an accident occurring on school property during a physical education class.

The accident occurred while DeCent was awaiting his turn to wrestle. DeCent picked up a basketball and began bouncing it against the wall. The ball got loose and both Leitch—the student supervisor—and DeCent went to recover it. In order to prevent DeCent from reaching the ball, Leitch grabbed him around the waist and lifted him off the ground. Leitch then either fell or dropped DeCent on his head, breaking DeCent's neck. DeCent is now a quadriplegic.

DeCent's parents brought suit against the school, various administrators and teachers at the school, and Jim Leitch. The DeCents settled all claims against named defendants for $810,863. The school's primary insurance carrier, Continental Insurance Company, paid $500,000, and Interstate, the school's secondary insurer, paid the remaining $310,863.

Interstate brought this suit seeking reimbursement from Auto–Owners for the $310,863 settlement paid to Kenneth DeCent. Auto–Owners insured Jim Leitch, the student supervisor, under his father's homeowners insurance. The policy provides:

This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. This Company shall have the right and duty, at its own expense, to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient. This Company shall not be obligated to pay any claim or judgment or defend any suit after the applicable limit of this Company's liability is exhausted by payment of judgments or settlements.

The policy further provides that, if there is other insurance available covering the same risk, it will contribute either by equal shares or on a pro rata basis.

a. Except as provided in 7 b. below if the Insured has other valid and collect-

ible insurance against a loss covered under Coverage E—Personal Liability, this Company shall not be liable under this policy for a greater proportion of such loss than that stated in the applicable following provision:

(1) Contribution by Equal Shares;

If all of such other insurance includes a provision for contribution by equal shares, this Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid. With respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(2) Contribution by Limits;

If any of such other insurance does not include a provision for contribution by equal shares, this Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

The Interstate policy was an umbrella policy with a limit of $1,000,000. It contained the following "excess" insurance provision:

OTHER INSURANCE: If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this policy, (other than insurance that is specifically in excess of the insurance afforded by this policy) the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

Auto–Owners moved for summary judgment on the grounds that either Inter-

state's policy came before Auto–Owners' policy in the order of priority of payment or Auto–Owners did not cover Leitch in this situation because he was engaged in a "business pursuit." Interstate filed a cross-motion for summary judgment, arguing that it was entitled to reimbursement from Auto–Owners because its policy was secondary to Auto–Owners'.

The trial court granted appellant's motion for summary judgment, finding that Interstate's policy was "closest to the risk" and that Leitch was engaged in a business pursuit so that he was not covered under the Auto–Owners policy.

Interstate appealed. The court of appeals reversed, *Interstate Fire & Casualty Co. v. Auto–Owners Ins. Co.*, 421 N.W.2d 355 (Minn.App.1988), finding that Leitch was not engaged in a business pursuit at the time of the accident so the Auto–Owners policy did cover him.[1] It also found that the two insurance policies operated on different levels. Auto–Owners' policy was primary and Interstate's was an umbrella policy designed only to cover any excess loss after the primary insurer had paid. After reversing the summary judgment for Auto–Owners, the court denied Interstate summary judgment and remanded the case for trial to determine whether Leitch had been negligent. A dissent argued that Interstate's policy more clearly contemplated coverage for accidents sustained on school property than Auto–Owners' homeowners policy.

We granted Auto–Owners' petition for further review.

The issue raised on appeal is whether Auto–Owners is entitled to summary judgment because there are no disputed material facts, and Interstate is the primary insurer as a matter of law.

On appeal from a summary judgment, this court determines whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn. 1979). In this case, the facts are essential-

1. Both parties now concede coverage of Jim Leitch.

ly undisputed so this court need only review the trial court's application of the law in interpreting the language of the two insurance contracts. *See Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978).

The heart of this dispute is the interpretation of the respective other insurance clauses. Auto–Owners' policy contains a "pro rata" clause to govern other insurance. It provides that if there is other valid and collectible insurance, Auto–Owners will pay only its pro rata share of the loss in the proportion that the limit of its policy bears to the aggregate limits of all valid and collectible insurance or in equal shares if the other policies so provide.

Interstate's policy contains an "excess" clause to govern other insurance. It provides that its liability is limited to the amount by which the loss exceeds the coverage provided by other valid and collectible insurance.

The threshold question in this appeal is whether a pro rata and an excess clause conflict. Appellant argues that they do; consequently, the court must determine which policy is "closest to the risk." Respondent argues that the two clauses can be reconciled so that the "closest-to-the-risk" analysis is unnecessary.

Minnesota has taken a different approach than the majority of jurisdictions in deciding whether excess and pro rata clauses conflict. The majority position reconciles the two clauses by interpreting the policy containing the excess clause as secondary coverage where there is another policy covering the same risk. The courts reason that, where an excess clause is inserted in a liability insurance policy, the usual intent of the insurer is to provide only secondary coverage. On the other hand, a pro rata clause "is intended to become effective only when other valid and effective *primary* insurance is available." Comment, *Concurrent Coverage in Automobile Liability Insurance*, 65 Colum.L. Rev. 319, 328 (1965) (emphasis in original) (*cited with approval in Jones v. Medox, Inc.*, 430 A.2d 488, 491 (D.C.App.1981)).

In this case, the trial court found that the two clauses did conflict and Interstate's policy was "closest to the risk." In reversing the granting of summary judgment, the court of appeals did not apply the "closest-to-the-risk" test because it did not find a conflict between the two clauses. The court adopted the reasoning of *Jones v. Medox, Inc.* and found that, in the pro rata clause, other valid and collectible insurance refers only to *primary* insurance. Since Interstate's coverage was only secondary, Auto–Owners' pro rata provision did not apply to it; consequently, Auto–Owners was not entitled to summary judgment.

In support of its reasoning, the court of appeals described the special nature of umbrella coverage:

The courts are not ignorant of the desirable socio-economic consequences attendant upon the providing of umbrella or catastrophic coverages. They recognize that this involves no attempt upon the part of a primary insurer to limit a portion of its risk by describing it as "excess," nor the employment of devices to escape responsibility. Therefore, *umbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses.* 8A Appleman, *Insurance Law and Practice*, § 4909.85 (rev. ed. 1981) (emphasis added) (footnotes omitted).

*Interstate*, 421 N.W.2d at 358.

In Minnesota, this court does not simply look at the type of "other insurance" clauses involved. In *Integrity Mutual Insurance v. State Automobile & Casualty Underwriters Insurance Co.*, 307 Minn. 173, 175, 239 N.W.2d 445, 446 (1976), this court explained that the better approach was to "allocate respective policy coverages in light of the total policy insuring intent, as determined by the primary risks upon which each policy's premiums were based and as determined by the primary function of each policy." In *Integrity*, this court found that an excess clause and a pro rata clause do conflict. *Id.* at 176–77, 239 N.W. 2d at 447.

Appellant argues that, because this court found that an excess and a pro rata clause conflict in *Integrity*, the court must employ the "closest-to-the-risk" analysis in this case. Auto–Owners lists three factors that the court set out in considering which policy is "closest to the risk:"

(1) Which policy specifically described the accident-causing instrumentality?

(2) Which premium is reflective of the greater contemplated exposure?

(3) Does one policy contemplate the risk and use of the accident-causing instrumentality with greater specificity than the other policy—that is, is the coverage of the risk primary in one policy and incidental to the other?

*Auto Owners Ins. Co. v. Northstar Mut. Ins. Co.*, 281 N.W.2d 700, 704 (Minn.1979).

Respondent points out that, in *Jostens, Inc. v. Mission Insurance Co.*, 387 N.W.2d 161 (Minn.1986), this court did not use the "closest-to-the-risk" analysis to determine priority of coverage between an underlying carrier and an umbrella carrier.

While the underlying carrier is said to be primary and the umbrella carrier is said to be excess, this is not the same relationship as between two carriers in the usual primary-excess situation, where one insurer is primary because "closest to the risk," thereby leaving the other insurer as excess.

*Id.* at 165. In *Jostens*, however, the umbrella carrier, Mission, had specifically required Jostens to carry a certain amount of underlying insurance, which was provided by Wausau. Consequently, Mission's coverage was secondary to Wausau's primary coverage. Here, Interstate designed its coverage to be secondary to Continental's, the underlying carrier. The policy specifically so provides. Continental, however, is not contesting its coverage; it has already paid up to its limits.[2] The relationship between Interstate's and Auto–Owners' coverage is not as specifically defined. Interstate's policy does not name Auto–Owners

as an underlying insurer. Because Interstate and Auto–Owners do not stand in relationship to each other as umbrella carrier and underlying carrier as in *Jostens*, further analysis is necessary.

It appears to us that, in this case, rather than applying the three-part "closest-to-the-risk" test, it is more helpful to use the broader approach set out in *Integrity* of allocating respective policy coverages in light of the total policy insuring intent, as determined by the primary policy risks and the primary function of each policy. 307 Minn. 173, 175, 239 N.W.2d 445, 446. As the dissent of the court of appeals notes, Interstate, the umbrella carrier, contracted with the school district to provide coverage in excess of the underlying insurance provided by Continental, the primary carrier. While it is true that Interstate relied on Continental's primary coverage in setting its premium, Interstate was not further relying on each student having a family homeowners policy when it calculated its risk in insuring the school district. The umbrella policy contemplated coverage for accidents and injuries sustained on school property during school events. This injury caused by a student supervisor during a physical education class is precisely the type of risk Interstate intended to cover in providing catastrophic insurance to the school district. To hold that Auto–Owners is the primary insurer for this accident would be to ignore the intent of the respective policies.

Accordingly, we reverse the court of appeals and reinstate the trial court's grant of summary judgment in favor of Auto–Owners.

WAHL and SIMONETT, JJ., took no part in the consideration or decision of this matter.

---

**2.** Interstate's policy provides that, "[i]n the event of * * * exhaustion of the aggregate limits of liability under said underlying insurances by reason of losses paid hereunder, this policy shall * * * continue in force as underlying in-

surance." This clause seems to provide that, once Continental has paid up to its limits, Interstate becomes the underlying, or primary, insurer.