ILLINOIS FARMERS INSURANCE
COMPANY, Appellant,

v.

DEPOSITORS INSURANCE COMPANY,
Respondent.

No. C7–91–1836.

Court of Appeals of Minnesota.

Feb. 4, 1992.

Eric J. Magnuson, William J. Egan, Rider, Bennett, Egan & Arundel, Minneapolis, for appellant.

Thomas E. Peterson, Peterson & Hektner, Minneapolis, for respondent.

Considered and decided by CRIPPEN, P.J., and PARKER and STONE *, JJ.

## OPINION

PARKER, Judge.

This declaratory judgment action arises from a dispute between two insurance companies regarding coverage. Two passengers' heirs brought wrongful-death claims against the vehicle's owner and the driver. Illinois Farmers Insurance Company insured the driver, and Depositors Insurance Company insured the vehicle, which the driver was operating with the owner's permission.

Depositors did not dispute it was primarily liable for the statutory minimum of $30,-000 on each claim. It maintained, however, that the balance should be prorated between the two companies. The court was to determine whether the insurers should prorate the amount over the statutory $30,-000 on each claim, or whether Depositors was primarily liable up to its policy limits and Farmers secondarily liable for any excess up to its own policy limits.

The trial court ruled that Depositors was primary for the first $30,000 on each claim and that the insurers should prorate the remainder of the damages, deducting the aggregate $60,000 in primary coverage from the limits in Depositors' policy. Of the amount in excess of $30,000 for each claim, the trial court held Depositors responsible for 46.8 percent and Farmers responsible for 53.4 percent.

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

On appeal Farmers argues that the trial court's order requires reversal because the policies' "other insurance" clauses conflict and, under the closeness-to-the-risk analysis, Depositors is primarily liable for the entire amount of the claims. We reverse.

## FACTS

In 1989, three young men were killed in a single-vehicle accident in Wisconsin. The owner of the car was Donald Olson, a Minnesota resident, who insured the auto through Depositors. His son, Joseph, was a resident of Olson's household and was insured under this policy. Joseph had permission to use his father's car the day of the accident.

Depositors' liability limits were $500,000 per person/$500,000 per accident. The policy provides for coverage as follows:

PART A—LIABILITY COVERAGE
*Insuring Agreement.*
B. "Insured" as used in this Part means:
   1. You and any "family member" for the ownership, maintenance, or use, including loading or unloading, of any auto or "trailer."
   2. Any person using, including loading and unloading, "your covered auto" * * *.

The policy contains an amendatory endorsement, AB0160 (12–88), which modifies the liability coverage in Section B.2:

However, the insurance available for any person, other than you or a "family member," using "your covered auto," that exceeds the financial responsibility law limits where the auto is principally garaged shall be excess over any other collectible insurance.

The same endorsement also amends the policy's "other insurance" clause.

It is stipulated that Joseph's friend, Kevin Renlund, was driving. Renlund, as a resident relative of the named insured's household, was covered by *his* father's automobile insurance policy issued by

pursuant to Minn. Const. art. VI, § 2.

Farmers. This policy contained liability limits of $250,000 per person/$500,000 per occurrence.

As a result of the accident, wrongful-death claims were brought by the heirs of Joseph Olson and Donald Stein. Depositors acknowledged that its policy provided $30,000 in primary coverage for each claim and ultimately settled both claims. It settled the Olson claim for $93,000 and the Stein claim for $170,000. Farmers stipulated that these settlement amounts were reasonable and that the defense costs incurred in the Stein claim should be included in resolving the coverage dispute.

## ISSUE

Did the trial court err in prorating the coverages of the two policies for the amount in excess of $30,000 on each claim?

## DISCUSSION

■ Summary judgment is appropriate when no genuine dispute exists concerning any material facts. Minn.R.Civ.P. 56. Since the facts are undisputed, "this court need only review the trial court's application of the law in interpreting the language of the two insurance contracts." *Interstate Fire & Casualty Co. v. Auto-Owners Ins. Co.*, 433 N.W.2d 82, 85 (Minn.1988). The lower court's determination regarding the policy's language and insuring intent does not bind the reviewing court. *Garrick v. Northland Ins. Co.*, 469 N.W.2d 709, 711 (Minn.1991).

■ In determining priority coverage among insurers, a court must first look to the "other insurance" clauses of the policies to determine if they are in conflict. *Integrity Mut. Ins. Co. v. State Auto. & Casualty Underwriters Ins. Co.*, 307 Minn. 173, 174–75, 239 N.W.2d 445, 446 (1976). The *Integrity* court stated:

When it is clear that two or more companies are among themselves liable to the insured for his loss but the apportionment among the companies cannot be made without violating the other insurance clause of at least one company, then the courts must look outside the policies for rules of apportionment. * * * [T]he better approach is to allocate respective policy coverages in light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy. The Minnesota courts examine the policies and determine whether the insurers are concurrently liable on the risk, or one is primarily liable and another only secondarily liable. If they are concurrently liable, each must pay a pro rata share of the entire loss. On the other hand, if one insurer is primarily liable and the other only secondarily, the primary insurer must pay up to its limit of liability, and then the secondary insurer must pay for any excess up to its own limit of liability.

The nub of the Minnesota doctrine is that coverages of a given risk shall be "stacked" for payment in the order of their closeness to the risk. That is, the insurer whose coverage was effected for the primary purpose of insuring that risk will be liable first for payment, and the insurer whose coverage of the risk was the most incidental to the basic purpose of its insuring intent will be liable last. If two coverages contemplate the risk equally, then the two companies providing those coverages will prorate the liability between themselves on the basis of their respective limits of liability.

*Integrity*, 307 Minn. at 174–75, 239 N.W.2d at 446–47 (citations omitted).

If the court determines the "other insurance" clauses do not conflict, the court need not undertake the *Integrity* analysis of which policy is closest to the risk. *Eckblad v. Farm Bureau Mut. Ins. Co.*, 371 N.W.2d 78, 81 (Minn.App.1985), *pet. for rev. denied* (Minn. Sept. 26, 1985). *Integrity* applies, however, when the "other insurance" clauses of two or more insurers of a given risk conflict or when there are no provisions to apply. *Id.*

The crux of this dispute is whether the "other insurance" clauses conflict. Farmers maintains they do because they are both excess clauses and the only difference between them is that Depositors limits its

coverage for permissive users. Therefore, they urge, the court should apply the closeness-to-the-risk doctrine. That analysis shows that Depositors more closely contemplated the risk and should be primary until its liability limits are reached; their policy, concludes Farmers, is excess.

Depositors admits that the policies' "other insurance" clauses are virtually identical, but argues that they can be compatibly applied without resorting to the closeness-to-the-risk analysis. Bifurcating Depositors' coverage, this insurer asserts, avoids the typical conflict between excess clauses. When both policies are excess, the policies' coverage for the amount over $30,000 will be coordinated by reverting to the pro-rata provision of Depositors' "other insurance" clause. Depositors relies on the analysis advanced by Justice Simonett's concurrence in *McClain v. Begley*, 465 N.W.2d 680, 682–85 (Minn.1991), for support.

We do not believe Justice Simonett's analysis is apposite to this case. In his concurrence he stated he believed that a self-insured rental agency could limit omnibus coverage to its lessee-operators to the statutory minimum *in the rental contract. Id.* at 685. The discussion thus involved the ability of a lessor/owner and lessee/operator to limit liability by contract. In this case, however, we are dealing with a permissive user and a car owner between whom no contract exists.

We agree, however, that prorating the excess over the statutory minimum is fair. It is a question the legislature should consider. Nevertheless, we cannot affirm the trial court for several reasons.

■ This case does not involve proration. Depositors' "other insurance" clause does not state that *if a permissive driver is involved,* another policy claiming to be excess should be prorated with the Depositors policy. The policy's "other insurance" clause reads as follows:

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that

our limit of liability bears to the total of all applicable limits.

However, any insurance we provide for:

\* \* \* \* \* \*

2. any person, other than you or a "family member," using "your covered auto," that exceeds the financial responsibility law limits where the "covered auto" is principally garaged shall be *excess* over any other collectible insurance.

(Emphasis added.) The only fair reading of Depositors' policy is that it will prorate with the other applicable insurance *unless* the insurance provided is for liability incurred by permissive users. If a permissive driver is involved, as here, Depositors' policy states that it is excess for the amount over $30,000. Depositors' intent to be excess is shown by the policy's use of "however" in the "other insurance" clause immediately preceding the excess insurance provision.

Farmers' policy also contains an "other insurance" clause, stating it is excess when its insured is driving a vehicle he or she does not own (as here):

If there is other applicable [auto liability insurance] on any other policy that applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

Any insurance we provide for a vehicle you do not own shall be *excess* over any other collectible insurance.

(Emphasis added.)

■ When both policies claim to be excess, as they do here, they are deemed to conflict. *See, e.g., Federated Mut. Ins. Co. v. American Family Mut. Ins. Co.,* 350 N.W.2d 425, 427 (Minn.App.1984) (court held that both policies claimed to be excess coverage and therefore conflicted). When two or more insurance policies covering the same incident conflict, the court applies the closeness-to-the-risk analysis. *Eckblad,* 371 N.W.2d at 81. The supreme court has set forth three factors to consider:

(1) Which policy specifically described the accident-causing instrumentality?

(2) Which premium is reflective of greater contemplated exposure?

(3) Does one policy contemplate the risk and use of the accident-causing instrumentality with greater specificity than the other policy—that is, is coverage of the risk primary in one policy and incidental to the other?

*Auto–Owners Ins. Co. v. Northstar Mut. Ins. Co.,* 281 N.W.2d 700, 704 (Minn.1979).

It is true, as Depositors notes, that the three-part test is not always applied and the courts have, when appropriate, used the broader approach set out in *Integrity* of allocating respective policy coverages in light of the total policy insuring intent, as determined by the primary policy risks and the primary function of each policy. *See Interstate,* 433 N.W.2d at 86; *see also Garrick,* 469 N.W.2d at 712.

In *Interstate* a student was injured in physical education class by an instructor's assistant. *Interstate,* 433 N.W.2d at 83. The school's insurer covered up to its limits, and the student's homeowner's insurer and school's umbrella coverage carrier disputed coverage of the remainder of the damages. *Id.* The court used the broader approach to determine that the student's injury, caused by inadequate supervision during a physical education class, was precisely the type of risk the insurer intended to cover in providing catastrophic insurance to the school district. *Id.* at 86. The insurer had not relied on each student having a family homeowner's policy, the court reasoned, when it calculated its risk in insuring the school district. *Id.*

*Garrick* involved the priority of three insurance policies, two of which were commercial transportation insurers and one which was an auto insurer. *Garrick,* 469 N.W.2d at 710. The accident involved a collision between a semi-truck/trailer and a car. *Id.* The court concluded that the commercial insurers designed their policies for commercial transportation risks. *Id.* at 712. Since the car insurance policy was designed to deal with automobile risks, the total insuring intent and the primary function of the policies did not point to the auto insurer as primary. *Id.*

We believe that use of the broader approach was appropriate in both *Interstate* and *Garrick,* because the insurers involved intended to cover risks differing not only in kind but also in size. For example, in *Garrick* the commercial transportation insurers' risks were much greater than those an auto insurer contemplated, due to the size of the vehicles involved and the greater travel time during which a commercial vehicle creates exposure.

■ The primary function of both Farmers' and Depositors' policies, here, is to insure auto risks. In disputes involving two auto insurers, we believe that the three-part test is necessary to determine which insurer *more closely* intends to insure the risk incurred by auto use. *See, e.g., Federated,* 350 N.W.2d at 427 (court used three-part test to determine that auto policy insuring car was closer to the risk than the auto policy covering the permissive driver); *Transamerican Ins. Co. v. Austin Farm Center, Inc.,* 354 N.W.2d 503, 508 (Minn.App.1984) (court used three-part test to determine that auto policy insuring truck was closer to risk than auto policy insuring the driver), *pet. for rev. denied* (Minn. Feb. 6, 1985). Accordingly, we direct our discussion to the three-part test.

A. *Policy which specifically described accident-causing instrumentality.* This factor requires that the court read the policy language to determine whether the vehicle/instrumentality is specifically described. If so, then the courts have determined that the policy is primarily liable, particularly if the other policy described the instrumentality in only general terms under its policy coverage. *See Federated,* 350 N.W.2d at 425 (policy which insured the vehicle involved in the accident was primarily liable, rather than the policy providing coverage if its insured was driving vehicle he or she did not own).

This part of the analysis weighs in favor of finding Depositors primary, since that policy specifically describes the accident-causing instrumentality.

B. *Premium which reflects greater exposure.* It is unknown what Farmers' premiums were. The amounts of the Depositors premiums are in the record, but Olson had two cars. It is unknown which premium was paid for the car involved in the

accident and whether Olson's premiums were lowered since the language of the policy was amended. The only evidence concerning Depositors' premiums is an affidavit by the staff manager of the ALLIED Group of Companies (of which Depositors is part) which states that Depositors' "special excess arrangement relative to permissive users" "allows Depositors * * * to keep premium increases lower than they would have been without that provision." Without more specific evidence, this factor plays a weak part in our analysis. *Cf. Auto–Owners,* 281 N.W.2d at 704 (one insurer charged an additional $8 premium specifically for coverage of the boat and motor, thus specifically contemplating exposure for boat accident; in the other insurance policy no severable premium for boat insurance was charged).

C. *Policy which contemplates risk and use of accident-causing vehicle with greater specificity.* Minnesota courts often hold that, in conflicts between a policy covering a permissive user and a policy covering the vehicle involved, the policy covering the vehicle is primary. *See, e.g., Western Nat'l Mut. Ins. Co. v. United States Fire Ins. Co.,* 269 N.W.2d 34 (Minn. 1978); *Transamerican,* 354 N.W.2d at 508–09; *Federated,* 350 N.W.2d at 427. The court in *Federated* said that the insurer of the car collected premiums because it contemplated the risk that an insured might become involved in an accident while driving a car directly insured under the policy. *Federated,* 350 N.W.2d at 427. The policy covering the permissive driver only incidentally contemplated the risk that its insured might incur liability while driving another car. *Id.*

Similarly, Depositors contemplated the risk and use of the accident-causing vehicle with greater specificity than did Farmers. Depositors' policy expressly covers the vehicle involved in the accident and admits it is primary for the first $30,000 of each claim. In contrast, Farmers' policy expressly states that it affords primary coverage to the insured vehicles, but coverage for an individual insured driving a vehicle he or she does not own is excess.

Based on these considerations, we hold that Depositors affords primary coverage

and Farmers affords excess coverage. Underlying this result is the premise that the vehicle's insurer, rather than the permissive driver's insurer, is primary, because Minnesota law requires that vehicles, not people, be insured by liability coverage.

### DECISION

The trial court erred by prorating the damages between the two insurers. Because both auto insurance policies' "other insurance" clauses are excess clauses, they conflict. The court must apply the three-part "closeness to the risk" analysis when two or more auto insurers conflict as to coverage. Under that analysis, Depositors is primarily liable and must pay up to the limits of its liability. Farmers is only secondarily liable.

Reversed.