David GOEMAN, et al., Appellants,

v.

ALLSTATE INSURANCE COMPANY, Respondent.

No. A06–425.

Court of Appeals of Minnesota.

Dec. 19, 2006.

Robert W. Kettering, Jr., Douglas D. McGhee, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for appellants.

Thomas D. McCormick, McCormick Law Office, P.A., Minneapolis, MN, for respondent.

Considered and decided by MINGE, Presiding Judge, LANSING, Judge, and KLAPHAKE, Judge.

## OPINION

KLAPHAKE, Judge.

Appellants David and Charlotte Goeman and Trade Lake Mutual Insurance Company (Trade Lake) challenge the grant of summary judgment to respondent Allstate Insurance Company (Allstate), determining that under the "closest to the risk" doctrine, Trade Lake was primarily liable for injuries sustained by a child guest who was bitten by the Goemans' dog while at their cabin. On appeal, Trade Lake argues that because both policies were equally close to the risk, the policies provide concurrent coverage. We agree, and reverse and remand. We further reject Allstate's claim that Trade Lake's reply brief inappropriately includes "new matters" and deny Allstate's motion to strike.

## FACTS

In June 1998, an eight-year-old child was bitten by the Goemans' dog while in the living room of their cabin. This child was a guest at the cabin, which is located in Frederic, Wisconsin.

At the time of the incident, the Goemans also owned a primary residence in Richfield, Minnesota. The Goemans insured their cabin through Trade Lake and their primary residence through Allstate. Both homeowners' policies provided the Goemans with $100,000 in personal liability coverage; the Trade Lake policy, however, limited its coverage to occurrences within the state of Wisconsin.

In October 2001, the father of the child who was bitten sued the Goemans. Trade Lake assumed defense of the lawsuit. In October 2002, a jury awarded the child $34,209 in damages, and Trade Lake paid this amount, as well as an additional $2,807.34 in taxable costs and $19,055.73 in legal fees and costs. In total, Trade Lake paid out $54,272.07 on the claim.

Trade Lake and the Goemans thereafter brought this declaratory judgment action against Allstate, seeking a declaration that Allstate pay half of the damages or $27,136.04. On cross motions for summary judgment, the district court determined that the policies' excess coverage clauses were in conflict and that under the "closest to the risk" analysis, Trade Lake was primarily liable. The court further concluded that because the amount in controversy, $54,272.07, was "well under Trade Lake's policy limit of $100,000," there was "no excess for Allstate to pay in this case."

On appeal, Trade Lake argues that because the two policies are equally close to the risk, they provide concurrent personal liability coverage.

## ISSUES

1. Should this court grant Allstate's motion to strike Trade Lake's reply brief?

2. Did the district court err in determining that the Trade Lake policy was "closest to the risk" and was therefore primarily liable?

## ANALYSIS

### I.

Allstate moved to strike Trade Lake's reply brief, claiming that the reply brief is not confined to new matters raised in respondent's brief and thus violates Minn. R. Civ.App. P. 128.02, subd. 3 (stating that "reply brief must be confined to new matter[s] raised in the brief of the respondent"). By order dated June 21, 2006, this court deferred Allstate's motion to this panel for a ruling.

■ Allstate insists that the "geographic scope factor" discussed by Trade Lake in its reply brief is simply a re-argument of the same issue raised by Trade Lake in its initial brief. A reply brief should be limited to a "concise answer to new points" made by a respondent; it should not include a "repetition of arguments previously made [or] new matter not in response to points made by [the] respondent." *Albert Lea Ice & Fuel Co. v. United States Fire Ins. Co.,* 239 Minn. 198, 205, 58 N.W.2d 614, 619 (1953). To the extent that Trade Lake's reply brief offers a rebuttal of the arguments raised by Allstate, however, we do not believe that it violates rule 128.02. *See* 3 Eric J. Magnuson & David F. Herr, *Minnesota Practice* § 128.8, at 606 (2006) (stating that reply briefs are "liberally construed to allow the appellant to respond to the arguments advanced by the respondent, even if they are not technically 'new matter' "). We therefore deny Allstate's motion to strike.

## II.

■ On appeal from a grant of summary judgment, this court must determine whether genuine issues of material fact remain for trial and whether the district court erred in applying the law. *See State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990); Minn. R. Civ. P. 56.03. Where, as here, the facts are undisputed, an appellate court "need only review the [district] court's application of the law in interpreting the language of the two insurance contracts." *Interstate Fire & Cas.*

*Co. v. Auto–Owners Ins. Co.,* 433 N.W.2d 82, 85 (Minn.1988). The interpretation of an insurance contract raises a question of law that is reviewed de novo. *Garrick v. Northland Ins. Co.,* 469 N.W.2d 709, 711 (Minn.1991).

The parties agree that both of the Goemans' policies had "other insurance" clauses that provided excess coverage and that those clauses conflicted. The parties further agree that when faced with this type of conflicting coverage, Minnesota courts apply the "closest to the risk" analysis,[1] which is described as follows:

The nub of the Minnesota doctrine is that coverages of a given risk shall be "stacked" for payment in the order of their closeness to the risk. That is, the insurer whose coverage was effected for the primary purpose of insuring that risk will be liable first for payment, and the insurer whose coverage of the risk was the most incidental to the basic purpose of its insuring intent will be liable last. If two coverages contemplate the risk equally, then the two companies providing those coverages will prorate the liability between themselves on the basis of their respective limits of liability.

*Integrity Mut. Ins. Co. v. State Auto. & Cas. Underwriters Ins. Co.,* 307 Minn. 173, 175–76, 239 N.W.2d 445, 447 (1976).

■ The following three-part test is used to determine which policy is closest to the risk:

---

1. Minnesota courts sometimes apply the broader "total policy insuring intent" test when "other insurance" or "excess insurance" clauses conflict. *See Interstate Fire & Cas. Co. v. Auto–Owners Ins. Co.,* 433 N.W.2d 82 (Minn.1988). The analyses are similar under the two tests and often lead to the same result. *See U.S. Fidelity & Guarantee Ins. Co. v. Commercial Union Midwest Ins. Co.,* 430 F.3d 929, 934 (8th Cir.2005) ("Minnesota courts apply two different tests in apportioning liability between insurers when the other insurance clauses conflict: the 'total policy insuring intent' analysis or the 'closer to the risk' analysis. The 'total policy insuring intent' analysis is a broader test and 'examines the primary policy risks upon which each policy's premiums were based and the primary function of each policy.' ").

(1) Which policy specifically described the accident-causing instrumentality?

(2) Which premium is reflective of the greater contemplated exposure?

(3) Does one policy contemplate the risk and use of the accident-causing instrumentality with greater specificity than the other policy that is, is coverage of the risk primary in one policy and incidental to the other?

*Auto Owners Ins. v. Northstar Mut. Ins.*, 281 N.W.2d 700, 704 (Minn.1979); *see also Ill. Farmers Ins. v. Depositors Ins. Co.*, 480 N.W.2d 657, 660–61 (Minn.App.1992).

■ With respect to the first factor, the district court here concluded that "[b]oth policies provided broad personal liability coverage for a wide range of occurrences" and that neither policy more specifically described the accident-causing instrumentality, which was the Goemans' dog. The parties both agree with the district court's analysis on this first factor: neither policy specifically addressed the risk of an injury caused by a pet. Rather, the risk of a dog bite was merely one of many potential personal liabilities for a homeowner. *Cf. Nat'l Union Fire Ins. Co. v. Republic Underwriters Ins. Co.*, 429 N.W.2d 695, 697 (Minn.App.1988) (in coverage dispute between day-care provider liability insurer and homeowners' insurer, day-care insurer closer to the risk partly because its policy specifically contemplated injury resulting from careless actions of young children in day-care setting, while homeowners' policy did not).

With respect to the second factor regarding which premium reflects the risk of exposure, the district court concluded:

Trade Lake charged a premium of $514 per year for $100,000 of comprehensive personal liability coverage for the Goemans' Frederic, Wisconsin property. It is unclear to the Court the amount that Allstate charged for a year-ly … premium for coverage for the Goemans' Richfield, Minnesota property. However, [Allstate has] stipulated that [it] provided the same $100,000 in coverage that Trade Lake [did]. Again, the Court cannot answer the question as to primary and secondary liability using this prong of the "closeness to the risk" analysis.

Both parties also agree with the district court's analysis on this second factor: both insurers provided comprehensive personal liability coverage for the Goemans as part of their homeowners' insurance policy and neither contemplated greater exposure by an increased premium.

With respect to the third factor regarding whether one policy contemplates the risk with greater specificity, the district court determined that the Trade Lake policy more clearly contemplated the risk because it "more accurately cover[ed] the location where this tort occurred." In particular, the district court reasoned:

The Trade Lake policy does include geographic limitations for their policy. The "Seasonal Residence Endorsement Non–Wisconsin Resident" enclosure to the policy indicates that coverage "applies only to losses or occurrences that occur within the boundaries of the State of Wisconsin." The Trade Lake policy was specifically for the Goemans' Wisconsin property. Trade Lake's policy specifically describes the locale of the Goemans' cabin as being the location from where the insurance is based. It further explains that the coverage under this policy is only for incidents occurring within the State of Wisconsin. While both policies cover personal bodily injury, including the dog bite incident, it seems that the Trade Lake policy more accurately covers the location where this tort occurred. If this dog bite had occurred at the Goemans' Richfield,

Minnesota property, it is clear that Allstate would be exclusively liable.

We agree with Trade Lake that the district court erred in considering the "geographical scope of coverage" as the determinative factor here.

Allstate asserts that the Trade Lake policy was closest to the risk because its coverage was specifically limited to losses or occurrences in Wisconsin, which is where the dog bite occurred. While such a geographic restriction is not common, Allstate insists that an insurer with such a provision in its policy necessarily "accepts the primacy of its coverage" when the occurrence falls within that geographic restriction. We disagree and point out that the Allstate policy covered the Goemans in all 50 states, thus indicating that Allstate contemplated greater risks than Trade Lake, which sought to reduce its coverage by restricting liability to occurrences in Wisconsin.

We therefore conclude that both policies equally contemplated the risk of a dog bite injury and neither is closest to the risk. The location of the injury was merely fortuitous, and there is no language in either policy linking coverage for an injury caused by a pet to any particular place. While some types of risks may be dwelling specific, such as personal liability arising out of an accident in a swimming pool at a residence, the "accident-causing instrumentality" here was mobile and not limited to any particular residence. Thus, because both policies equally contemplate the risk of a dog bite injury, whether at the Wisconsin cabin or elsewhere, the district court erred in determining that the Trade Lake policy is closest to the risk.

## DECISION

Because the district court erred in determining that the Trade Lake policy was closest to the risk and primarily liable, we reverse the grant of summary judgment to Allstate and remand with directions to enter judgment for Trade Lake on its cross motion for summary judgment.

**Reversed and remanded; motion denied.**