1997–NMCA–012

933 P.2d 859

Joseph **GRIFFIN**, C.R.N.A.; **Phillip Jenkins**, C.R.N.A.; and **James King**, C.R.N.A., **Plaintiffs–Appellants/Cross–Appellees**,

v.

**GUADALUPE MEDICAL CENTER, INC., and Premier Anesthesia, Inc.**, Defendants–Appellees/Cross–Appellants.

No. 16468.

Court of Appeals of New Mexico.

Jan. 14, 1997.

Richard E. Olson, Rebecca Nichols Johnson, and Norman D. Ewart, Hinkle, Cox, Eaton, Coffield & Hensley, L.L.P., Roswell, for Appellants/Cross–Appellees.

Rod M. Schumacher and Barbara A. Reddy, Atwood, Malone, Turner & Sabin, P.A., Roswell, for Appellee/Cross–Appellant Guadalupe Medical Center, Inc.

Thomas M. Domme, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for Appellee/Cross–Appellant Premier Anesthesia, Inc.

## OPINION

APODACA, Chief Judge.

1. Plaintiffs appeal the trial court's decision, after a bench trial, holding that Defendants did not violate New Mexico's antitrust laws, NMSA 1978, Section 57–1–1 (Repl.Pamp.1995). In a separate appeal, Defendants sought relief from the trial court's order denying Defendants reimbursement for certain costs and fees. We granted Defendants' motion to consolidate the two appeals, and the two appeals have been designated as a direct and cross-appeal respectively.

2. The trial court determined there were no antitrust violations, no illegal tying arrangements, and no unlawful conduct by Defendants. Plaintiffs argue on appeal that the trial court erred in: (1) deciding that a certain agreement between Defendants was not an illegal tying arrangement, (2) ignoring the essential facilities doctrine, (3) failing to address the existence of an illegal group boycott, (4) excluding certain expert testimony concerning anti-competitive effects, (5) determining that there was no antitrust injury in the local market, and (6) concluding that Plaintiffs did not suffer an antitrust injury. We affirm the trial court's decision in both the direct and cross-appeal.

## I. FACTS

3. Plaintiffs are certified registered nurse anesthetists in the municipality of Carlsbad. When the New Mexico statute dealing with nurse anesthetists was amended in 1991, the requirement that nurse anesthetists be under the direction of and in the immediate area of a licensed physician was deleted. NMSA 1978, Section 61–3–6 (Repl.Pamp.1996). However, NMSA 1978, Section 61–3–23.3(C) (Repl.Pamp.1996) still requires that nurse anesthetists shall function under the direction of and in collaboration with a licensed physician. In its past dealings with nurse anesthetists, Defendant Guadalupe Medical Center (Medical Center), to comply with its own policies and procedures, has required that its nurse anesthetists be under the supervision and direction of a licensed physician. In 1989, the Medical Center contracted exclusively for anesthesia services with Dr. Leyba, a physician anesthesiologist. Dr. Leyba recruited Plaintiffs, who were allowed to provide anesthesia services at the Medical Center under the contract and supervision of Dr. Leyba. In 1993, Dr. Leyba left the Medical Center, partly because the Medical Center was dissatisfied with the level of his direction of the anesthesia services. The Medical Center, after unsuccessfully trying to enter into an agreement with Plaintiffs, contracted with Defendant Premier Anesthesia, Inc. (Premier) for exclusive anesthesia services. That agreement required that Premier offer employment to Plaintiffs, but one of the conditions in the agreement was that Plaintiffs would be supervised by a physician anesthesiologist provided by Premier. Plaintiffs refused to be bound by this condition, contending that such an agreement destroyed their independence and illegally restrained competition within the hospital and the Carlsbad area. It is this agreement that Plaintiffs claimed was in violation of New Mexico antitrust laws.

## II. DISCUSSION

### A. Findings Of Fact

4. The trial court articulated fifty-four findings of fact providing an extensive background for that court's rationale in reaching its decision. Plaintiffs failed to cite or challenge findings of fact numbers 1–6, 8–12, 14–18, 21–29, 31, 35–37, 39–51, and 54. Although finding of fact No. 7 is mentioned by Plaintiffs, it is not challenged, but merely used to support an argument of Plaintiffs. Unchallenged findings of fact are binding on appeal. *Stueber v. Pickard,* 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991). These findings and the remaining findings are addressed more fully in our discussion of the issues.

### B. Illegal Tying Arrangement Subject To Per Se Analysis

5. Plaintiffs argue that the trial court erred in concluding the agreement between Defendants was not an illegal tying arrangement subject to per se violation analysis. Plaintiffs correctly state the three elements they must prove in order to prevail on a per se tying claim: the existence of (1) a scheme involving two distinct products in which a buyer must purchase the tied product in order to obtain the tying product, (2) a seller possessing sufficient economic power in tying product market to appreciably restrain competition in the tied product market, and (3) an arrangement affecting a not insubstantial amount of commerce. *Smith Mach. Corp. v. Hesston, Inc.,* 102 N.M. 245, 250, 694 P.2d 501, 506 (1985), *aff'd,* 878 F.2d 1290 (10th Cir.1989). Although the trial court did not specifically articulate which findings it relied on in reaching its conclusion, the court found that, in the Carlsbad area, professional anesthesia services were offered to hospital patients only in conjunction with the provision of hospital services. Additionally, Plaintiffs had proposed two findings of fact simply declaring that (1) the relevant tying product or service was patient surgical or hospital services, and (2) the tied market was the consumer market for anesthesia services and the market for anesthesia providers. Plaintiffs then proposed a conclusion of law that the two services (hospital or surgery and anesthesia) were separate. Even if Plaintiffs' proposed findings were correct, the proposed conclusion of law, that the services were separate, does not follow.

6. One can infer from the trial court's finding (and from Plaintiffs' conten-

tion that the finding was "incomplete" because it did not find the services were "separate and distinct") that the trial court determined the services were not separate and distinct. If, from the facts found, the other necessary facts may be reasonably inferred, the judgment will not be disturbed. *Herrera v. Roman Catholic Church,* 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct.App. 1991). With the evidence it had before it, the trial court rejected the proposed conclusion that the services were separate. Unless clearly deficient, a trial court's findings will be construed to uphold the judgment rather than to reverse it. *Id.* Plaintiffs' only citation to the record (testimony as to the quality and scheduling of nurse anesthetists) fails to support their contention that, in the Carlsbad area, the services are separate and distinct. Plaintiffs' contention that Defendants have conceded this point is without citation to the record. This Court will not search the record to find facts, *Totah Drilling Co. v. Abraham,* 64 N.M. 380, 385, 328 P.2d 1083, 1086 (1958), nor will we accept blanket statements of fact (i.e., that the services are separate), unsupported by reference to evidence in the record. *Olguin v. Manning,* 104 N.M. 791, 792, 727 P.2d 556, 557 (Ct. App.1986).

■ 7. Plaintiffs have failed to properly attack the trial court's finding and the denial of Plaintiffs' proposed findings and conclusion regarding whether the services were separate. The trial court's findings not properly attacked are conclusive on appeal. *Giovannini v. Turrietta,* 76 N.M. 344, 347, 414 P.2d 855, 857 (1966). Plaintiffs have not cited any evidence in the record to convince us that the trial court's finding was not supported by substantial evidence. Because the trial court found the services were not separate, the first prong of the test for per se analysis had not been met. No further inquiry was required into the two remaining elements of the per se tying analysis, economic power in the market and action affecting a not insubstantial amount of commerce.

8. Likewise, we need not address the economic interest analysis. In evaluating Plaintiffs' challenge to the trial court's conclusion, we have viewed the facts in a manner most favorable to Defendants as the prevailing parties, including all reasonable inferences in support of the trial court's decision and disregarding all inferences or evidence to the contrary. *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.,* 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991). In so viewing such facts and the trial court's conclusion, we determine that the trial court applied the law to the facts correctly. The trial court's conclusion that there was no illegal tying arrangement was therefore correct.

## C. Essential Facilities Doctrine

■ 9. In their proposed conclusions of law, Plaintiffs urged the trial court to conclude that Defendants violated the "essential facilities doctrine." The trial court declined. Plaintiffs cited no New Mexico authority for the application of the essential facilities doctrine. We did not locate and are not aware of any New Mexico cases adopting the doctrine. In the absence of New Mexico authority on point, New Mexico's Antitrust Act is interpreted in harmony with the federal antitrust laws. *Smith Mach.,* 102 N.M. at 249, 694 P.2d at 505. The essential facilities doctrine states that, where facilities cannot practicably be duplicated by would-be competitors, those in possession must allow them to be shared on fair terms. *Pontius v. Children's Hosp.,* 552 F.Supp. 1352, 1370 (W.D.Pa.1982). Plaintiffs cite only *McKenzie v. Mercy Hospital of Independence, Kansas,* 854 F.2d 365 (10th Cir.1988) for the proposition that we should adopt the essential facilities doctrine as new policy.

10. Defendants, on the other hand, point to what we consider as more persuasive federal authority. First, the essential facilities doctrine must be carefully delimited. *Pontius,* 552 F.Supp. at 1370. Second, *Castelli v. Meadville Medical Center,* 702 F.Supp. 1201, 1209 (W.D.Pa.1988) (and cases cited), *aff'd,* 872 F.2d 411 (3d Cir.1989), specifically holds that the essential facilities doctrine should not be applied to exclusive service contracts by hospitals. Finally, *Castelli, Pontius,* and *McMorris v. Williamsport Hospital,* 597 F.Supp. 899, 915 n. 15 (M.D.Pa.1984) all hold that the doctrine should not be applied to a

hospital's staffing decisions. The Medical Center's staff bylaws classify nurse anesthetists as allied health practitioners and require that they be under the supervision and direction of a physician.

11. We need not decide whether the essential facilities doctrine should never be applied to exclusive contracts involving hospitals. Persuaded by the weight of federal authority, we only conclude that the essential facilities doctrine should not be applied to the facts of this case. We therefore determine that the trial court did not err. We note that the trial court did make a finding relating to the ability of Plaintiffs to continue working. (R.P. 318, 321) Indeed, that finding could be construed as an application of one of the factors under the essential facilities doctrine. *McKenzie*, 854 F.2d at 369. Because of our disposition concerning this issue, however, it is not necessary to review that finding.

### D. Group Boycott

12. Plaintiffs argue that the trial court erred in failing to address the existence of a group boycott and in refusing to adopt Plaintiffs' proposed findings and conclusions on that issue. The trial court did adopt Plaintiffs' proposed finding No. 6 as its own finding No. 6. The trial court, however, rejected all the other proposed findings and the conclusion that there was a group boycott. Plaintiffs' proposed findings (that Defendants had a conscious commitment to eliminate competition and to prevent Plaintiffs from competing) directly conflict with the trial court's findings.

13. The trial court found that the Medical Center had: (1) decided to have an anesthesiologist physician supervise the nurse anesthetists because the Medical Center believed it would enhance its ability to recruit other medical professionals and such supervision was a more efficient way to administer patient care; (2) desired Plaintiffs to work at the hospital, but, for policy and staffing reasons, continued to insist on supervision; and (3) never interfered with Plaintiffs' business relationships or intended to cause Plaintiffs any economic harm or business duress. Those findings of the trial court were uncontested. The submission of proposed findings that are contrary to unchallenged findings of the trial court will not raise an issue on appeal. *Prager v. Prager*, 80 N.M. 773, 777, 461 P.2d 906, 910 (1969). Plaintiffs' proposed findings and their rejected proposed conclusion as to the existence of a group boycott are in direct conflict with the uncontested findings of the trial court, which we have previously noted are binding on us in deciding this appeal. The trial court's rejection of the conclusion that there was a group boycott was based upon those same findings, and we will not disturb that conclusion on appeal.

### E. Excluded Testimony

14. Plaintiffs argue that the trial court erred in excluding the testimony of William Golden. Mr. Golden was a certified public accountant and business manager for a group of anesthesia providers. Because Mr. Golden was familiar with anesthesia billing procedures, Plaintiffs wanted him to testify concerning the increased costs to consumers when supervision of nurse anesthetists was required. We note that the testimony was excluded as irrelevant only after lengthy discussion with counsel and after an extensive hearing on Plaintiffs' tender of proof. The determination of relevancy, as well as materiality, rests largely within the discretion of the trial court. *Wilson v. Hayner*, 98 N.M. 514, 515, 650 P.2d 36, 37 (Ct.App.1982). We have carefully considered the authorities cited by Plaintiffs—*Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977); *Board of Trade of City of Chicago v. United States*, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918); and *Oltz v. St. Peter's Community Hospital*, 861 F.2d 1440 (9th Cir.1988). We find no mention in those cases of increased costs to the consumer as a relevant factor. Nevertheless, even if we assumed that those cases stood for the proposition that increased costs to the consumer are a relevant factor in determining effects on competition, we believe that the trial court could have excluded the testimony nonetheless.

15. Relevant evidence is evidence having a tendency to make the existence of any fact of consequence more probable than it would

**66**

be without the evidence; the problem must be decided on a case-by-case basis. *In re Application of Plains Elec. Generation & Transmission Coop., Inc.*, 106 N.M. 775, 778, 750 P.2d 475, 478 (Ct.App.1988). Plaintiffs have failed to point to any evidence or cite to any authority that shows a relevant connection between increased costs to the consumer and harm to Plaintiffs. As Defendants point out in their answer brief, increased costs to the consumer may actually benefit competitors rather than harm them, thus benefiting competition. *Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 582–83, 106 S.Ct. 1348, 1353–54, 89 L.Ed.2d 538 (1986). An increase in price to the patient does not establish an antitrust injury to Plaintiffs. *See id.; Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344, 110 S.Ct. 1884, 1894–95, 109 L.Ed.2d 333 (1990). As we noted previously, the determination of relevancy is largely a matter of discretion for the trial court. The trial court was not persuaded the evidence was relevant, and we are not convinced that the trial court abused its discretion in excluding the testimony.

### F. Antitrust Injury

16. In their final two issues, Plaintiffs contend that the trial court erred in finding there was no antitrust injury in the local market and no antitrust injury to Plaintiffs. Although Plaintiffs argued these two issues separately, we discuss them together because the trial court used the same findings and conclusions to address both issues. Initially, we note that Plaintiffs argue that free trade and competition are inhibited by an exclusive agreement, the very form of agreement under which Plaintiffs reaped benefits from 1989 until 1993 under Dr. Leyba.

17. After making extensive findings of fact, the trial court concluded that Plaintiffs had not suffered any antitrust injury, the agreement was not an illegal tying arrangement, and, weighing the competitive and anti-competitive effects, there was no unlawful conduct on the part of Defendants.

18. First, the trial court found Defendants had not interfered with Plaintiffs' existing business relationships nor caused Plaintiffs economic duress. The trial court also found the Medical Center's decision to require supervision of nurse anesthetists was based on reasonable business and patient efficiency concerns, as well as on an extension of the Center's staffing criteria for Plaintiffs as "allied health practitioners." Plaintiffs contend they challenged the finding that they were "allied health practitioners." Plaintiffs, citing no other evidence than the same evidence the trial court used to reach an opposite conclusion, merely urge us to substitute our own interpretation for that of the trier of fact. It is for the trier of fact to resolve conflicts in the evidence. On appeal, we will not reweigh the evidence. *Roybal v. Morris,* 100 N.M. 305, 311, 669 P.2d 1100, 1106 (Ct.App.1983). Plaintiffs' attack on the finding that they were allied health practitioners amounts only to a statement that the trial court's finding was wrong, a direct violation of the rules governing the preparation of briefs. *See Giovannini,* 76 N.M. at 347, 414 P.2d at 857. We thus accept the trial court's finding that Plaintiffs were allied health practitioners and therefore required supervision in accordance with the Medical Center's policy. All of the other findings of the trial court on the issue of injury to Plaintiffs were uncontested and are thus binding on this Court. It is clear that there was substantial support for the trial court's conclusion that Plaintiffs had suffered no antitrust injury.

19. Second, the trial court, in addition to the findings noted above, found that Plaintiffs were offered employment by Defendants under appropriate supervision but that they had refused such employment. That finding was also uncontested. Plaintiffs' argument that competition suffered because they were eliminated from the market is thus irrelevant and without merit. Plaintiffs simply removed themselves from competition by refusing to be supervised. The trial court also found Plaintiffs could easily be licensed in other states and could still compete by providing services on a full time *locum tenens* basis to hospitals other than the Medical Center. Plaintiffs challenge this finding, but the testimony concerning the ability of Plaintiffs to provide services as *locum tenens* to hospitals other than Medical Center came from Joseph Griffin, one of the Plaintiffs.

We believe that testimony supports rather than challenges the trial court's finding.

20. The only other challenge Plaintiffs make to the finding that Plaintiffs could continue to compete in the market is that the trial court failed to consider the local market for patients, anesthesia providers, and anesthesia services and that the trial court "may" by "implication" have erroneously defined the market as a national market. This challenge is completely without reference to any evidence in the transcript or record. When the brief fails to review or provide transcript references to the evidence, this Court will accept the trial court's findings. *Olguin,* 104 N.M. at 792, 727 P.2d at 557. An appellate court will not search the record to find facts with which to overturn the lower court's findings. *Totah,* 64 N.M. at 385, 328 P.2d at 1086.

21. Third, the trial court found that Defendants had acted reasonably in choosing to enter into an exclusive agreement with each other and that their conduct was not irrational, arbitrary or capricious. That finding was likewise not contested. Taken together with the other findings previously noted, the finding provides ample support for the trial court's conclusion that Defendants had not engaged in unlawful conduct. Plaintiffs have not shown us anything in the record indicating otherwise.

22. Finally, having found no injury, no forced removal from the competitive market, and no unlawful conduct, the trial court denied relief. Plaintiffs, in the final two sections of their brief in chief, make the same arguments that the trial court considered unpersuasive in rejecting Plaintiffs' tendered findings and proposed conclusions of law. When the trial court's findings of fact are supported by substantial evidence, as we have determined that they are, refusal to make contrary findings is not error. *State ex rel. Stratton v. Sinks,* 106 N.M. 213, 220, 741 P.2d 435, 442 (Ct.App.1987). Without the support of any evidentiary facts, Plaintiffs' arguments must fail. As we noted previously, when Plaintiffs have challenged the trial court's legal conclusions, we, in determining whether the trial court applied the law correctly to the facts, view those facts in

a manner most favorable to the prevailing party, indulging in all inferences in support of the court's decision, and disregarding all inferences or evidence to the contrary. *Golden Cone,* 113 N.M. at 12, 820 P.2d at 1326. Viewing Plaintiffs' contentions in that light, we affirm the trial court's decision that there was no injury, no involuntary removal from the market, no unlawful conduct, and thus, no antitrust violation.

**G. Defendants' Cross–Appeal**

23. In October 1994, after the trial court had orally announced its decision from the bench, Defendants approached Plaintiffs and asked them to provide anesthesia services until the agreement with Premier could be implemented. Plaintiffs agreed but on condition that Defendants not request costs if they prevailed. Defendants agreed. When the trial court finally rendered its written decision, Defendants requested costs. Based on the agreement between Plaintiffs and Defendants, the trial court denied costs to Defendants. Defendants argue that they should not be prevented from asking for costs because the agreement was not valid. Defendants thus contend that the trial court abused its discretion in denying costs to them as the prevailing parties.

24. Defendants contend the agreement was invalid because the trial court's order of January 4, 1994, prevented the Medical Center from implementing contingency arrangements with Defendant Premier for anesthesia services, thus allowing Plaintiffs to unfairly take advantage of the order and placing the Medical Center in a coerced position. The trial court's order of January 4, 1994, had preserved the status quo with Plaintiffs providing anesthesia services, under supervision, to the Medical Center, and the order had prohibited Defendants from implementing their agreement pending determination on the merits. The trial court pointed out that its order of January 4, 1994, had been a stipulated order agreed to by the parties. Additionally, the record indicates that the Medical Center was able to provide its own anesthesia services through Premier in only seven working days, casting serious doubt on the Medical Center's claim

that it was forced to accept Plaintiffs' services or go without such services. The trial court held that there was consideration and that the agreement had been initiated and agreed to by Defendants. Based on those findings, the trial court concluded the agreement was legally binding.

25. Defendants have not provided us with any evidentiary reference in the record to challenge the trial court's findings. In fact, the evidentiary record clearly supports the trial court's findings. Defendants' arguments of duress and coercion are likewise unpersuasive.

## III. CONCLUSION

26. We conclude that the trial court did not err in determining that Defendants did not violate New Mexico's antitrust laws. We also hold that the trial court did not abuse its discretion in denying costs to Defendants. We therefore affirm the trial court's decision in both the appeal and cross-appeal. The parties shall bear their respective costs on appeal.

27. **IT IS SO ORDERED.**

ALARID and BUSTAMANTE, JJ., concur.