2004-NMCA-101

96 P.3d 1179

**STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff–Appellee,**

v.

**FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, Defendant–Appellant.**

**No. 23,665.**

Court of Appeals of New Mexico.

June 22, 2004.

Thomas A. Simons, Claudia J. Joseph, The Simons Firm, L.L.P., Santa Fe, for Appellee.

Paul E. Houston, Kenneth J. Tager, Sturges & Houston, P.C., Albuquerque, for Appellant.

## OPINION

KENNEDY, J.

{1} Mary Woodruff (Woodruff) filed a claim for personal injuries suffered after a fall which occurred on May 15, 1998, while she was a visitor at an office building owned by Santa Fe Medical Dental Group (SFMDG). SFMDG is managed by Phoenix

Limited d/b/a Kokopelli Management Services (Kokopelli). State Farm Fire and Casualty Company (State Farm), which insured SFMDG, eventually settled Woodruff's claim, and filed a complaint for declaratory judgment against Kokopelli's insurer, Farmers Alliance Mutual Insurance Company (Farmers), seeking indemnification or subrogation of the settlement. The trial court determined that: (1) Farmers is the primary insurer; (2) State Farm provided adequate notice to Farmers; but (3) the settlement amount was unreasonable, and therefore, Farmers was not required to reimburse State Farm for the entire settlement amount; and (4) State Farm was entitled to prejudgment interest on the amount it was reimbursed. Farmers appeals. The request for oral argument is denied. We affirm.

## BACKGROUND

{2} Woodruff, an elderly woman who uses a wheeled-walker to move around, visited a laboratory located in the SFMDG building. When exiting the building, Woodruff's walker reportedly caught on a tear in the floor mat. As a result, Woodruff fell and broke her right femur. Woodruff made a claim against SFMDG, and, in June 1998, SFMDG passed the claim on to its insurer, State Farm. SFMDG had a property management agreement with Kokopelli, which required Kokopelli, among other things, to inspect the property as necessary, to accomplish repair and maintenance of the property, and to maintain full-time response capability for maintenance emergencies. SFMDG had also hired a janitorial service to clean the building. The janitorial service was not required to take care of maintenance except to the extent that it was required to "[a]ssist Contractors and Partners in areas of maintenance . . . as requested."

{3} Kokopelli's representative, Tom Simon (Simon), the person who signed the agreement with SFMDG, initially refused to disclose the name of its insurance agent to State Farm, stating that Kokopelli's insurer need not be involved in Woodruff's claim. Eventually, State Farm learned that Kokopelli's agent was Northern New Mexico Insurance Agency and that its insurer was Farmers, and sent notification of Woodruff's claim to the agent, asking the agent to forward the information to Farmers.

{4} In the meantime, State Farm investigated Woodruff's claim and engaged in settlement negotiations with her. State Farm reached a tentative settlement agreement with Woodruff for $170,000, but the negotiations did not end there because Woodruff's attorney "needed to verify" the amount with his client. The settlement agreement was not finalized because, during negotiations, it was discovered that Woodruff had developed a serious infection in her leg, requiring more hospitalization. State Farm eventually settled Woodruff's claim for $375,000. After failing in its attempt to receive reimbursement from Farmers, State Farm filed an action for declaratory judgment against Farmers. Both parties filed motions for summary judgment. The trial court granted partial summary judgment in favor of State Farm, finding that the primary insurer with respect to Woodruff's claim was Farmers, and the secondary insurer was State Farm; that SFMDG was not negligent as to Woodruff's claim; and that any negligence that occurred was solely on the part of Kokopelli. The trial court denied State Farm's motion for summary judgment as to the reasonableness of the settlement, and denied Farmers' motion in its entirety. A trial was held on the remaining issues. Following trial, the trial court determined that the settlement agreement between State Farm and Woodruff was unreasonable; that a reasonable settlement amount was $250,000; that Farmers was given adequate notice by State Farm whereby it had a reasonable opportunity to be involved in the settlement negotiations with Woodruff; and that Farmers was required to reimburse State Farm $250,000. At a later proceeding, the trial court granted State Farm's motion for prejudgment interest. Farmers appeals, arguing that the trial court erred in determining that it was the primary insurer; erred in deciding that Farmers must indemnify State Farm in the amount of $250,000, because State Farm did not engage in adequate efforts to involve Farmers; and erred in awarding prejudgment interest.

## DISCUSSION

### Primary/Secondary Insurer

#### Standard of Review

{5} The issue of primary and secondary insurer was decided in a summary judgment proceeding. The parties agree that the material facts are not disputed and that this Court reviews de novo the question of law presented by this issue. *See Barncastle v. Am. Nat'l Prop. and Cas. Cos.*, 2000–NMCA–095, ¶ 5, 129 N.M. 672, 11 P.3d 1234 (noting that, when the parties agree regarding the material facts, the standard of review on appeal from summary judgment is de novo).

#### "Other" Insurance Clauses

{6} Both parties also agree that the insurance policies involved in this case contain "other" or "excess" insurance clauses, which are in conflict with each other in that each attempts to make the other insurer primarily liable. The parties agree that "other" insurance clauses such as those included in the two insurance policies in this case would act to leave an insured without any coverage at all, and are therefore held to be "mutually repugnant" and cancel each other out. *See CC Hous. Corp. v. Ryder Truck Rental, Inc.*, 106 N.M. 577, 580–81, 746 P.2d 1109, 1112–13 (1987).

#### Closest to the Risk

{7} Below, and on appeal, both parties have agreed that, if the "other" insurance clauses in the two policies cancel each other out, the test to apply in determining which insurer is primary and which is secondary is the "closest to the risk" test discussed in *Branchal v. Safeco Insurance Co. of America*, 106 N.M. 70, 71, 738 P.2d 1315, 1316 (1987). Because both parties agree that the insurer that is closest to the risk is the primary insurer, we limit our discussion to this closest-to-the-risk analysis. In *Branchal*, our Supreme Court relied on a Minnesota decision to determine which automobile insurer was primarily liable and which was secondarily liable for damages claimed by an injured passenger. *Id.* (relying on *Transamerican Ins. Co. v. Austin Farm Ctr., Inc.*,

354 N.W.2d 503 (Minn.Ct.App.1984)). The *Branchal* Court determined that the policy insuring the vehicle that was involved in the accident, rather than the policy insuring the injured passenger, was closest to the risk and was, therefore, primarily liable. *Branchal*, 106 N.M. at 71, 738 P.2d at 1316. This closest-to-the-risk doctrine was reaffirmed in *Tarango v. Farmers Ins. Co. of Ariz.*, 115 N.M. 225, 226–27, 849 P.2d 368, 369–70 (1993). However, neither *Branchal* nor *Tarango* discuss the doctrine at any length; both cases simply adopt the result reached in *Transamerican*, that the insurer of the vehicle involved in an accident is closer to the risk than the insurer of the passenger in that vehicle. We therefore look to Minnesota case law.

{8} Minnesota courts have developed two different tests to use in determining which of two insurers is closest to a particular risk. One is a three-part test that is primarily applicable to automobile cases. *Illinois Farmers Ins. Co. v. Depositors Ins. Co.*, 480 N.W.2d 657, 660–61 (Minn.Ct.App. 1992). This is the test that was applied in *Transamerican*. In cases not involving automobiles, Minnesota courts apply a broader test requiring a determination of the "total policy insuring intent" based on the primary policy risks and the primary function of each policy. *Illinois Farmers*, 480 N.W.2d at 661; *Interstate Fire & Cas. Co. v. Auto–Owners Ins. Co.*, 433 N.W.2d 82, 86 (Minn.1988). This broader approach, involving a more helpful review than the "mechanical application" of the three-part test, is applied when two policies are intended to cover risks that differ in size and type. *North Star Mut. Ins. Co. v. Midwest Family Mut. Ins. Co.*, 634 N.W.2d 216, 223 (Minn.Ct.App.2001); *see also Illinois Farmers*, 480 N.W.2d at 661. As discussed below, the insurance policies in the case before us cover risks that differ in size and type, and the policies contain liability coverage unrelated to automobiles. Therefore, we apply the broader test discussed in the Minnesota cases cited above, and analyze the policies to determine the primary risks contemplated by each policy, and the primary functions of each policy.

{9} State Farm's policy is labeled a "Business Policy," and provides business liability coverage in the amount of $5,000,000. The premium for the policy, which includes coverage for damage to SFMDG's buildings as well as the liability coverage, is listed as $12,924. Farmers' policy is labeled a "BU-SINESSOWNERS POLICY," and provides coverage for liability and medical expenses in the amount of $1,000,000. The premium for the policy is listed as $284. Farmers' policy lists Kokopelli as its named insured, while State Farm's policy lists SFMDG as its named insured. Neither party argued below that its particular liability policy was not designed to cover a plaintiff's injuries.

{10} The primary policy risks contemplated by the State Farm policy included risks associated with the entire premises in which SFMDG operated, and all types of risks associated with those premises. The primary policy risks contemplated by the Farmers policy included the duties performed by Kokopelli at the SFMDG premises. As noted above, Kokopelli's duties included inspection of the premises and maintenance aimed at preventing dangerous conditions from developing. For example, the chairman of the management committee for SFMDG, Dr. Kenneth Brooks, stated in his affidavit that Kokopelli was responsible for supervising and inspecting janitorial work, and that "repair or removal of a torn floor mat is a maintenance issue fully within the scope of Kokopelli's obligations as manager." An affidavit of Ronald Trujillo, State Farm Claims Specialist, stated that Kokopelli's representative, Simon, told Trujillo that Kokopelli's employee "walked the Property daily inspecting for maintenance needs," and that "if a maintenance issue such as a torn floor mat existed, Kokopelli would be aware of it."

{11} Farmers argues that the torn floor mat that caused Woodruff's fall belonged to SFMDG and was included in the property insured under State Farm's policy, and therefore, State Farm's insurance policy was specifically intended to insure against risks connected to the disrepair of the floor mat. State Farm counters by arguing that the cause of Woodruff's accident was Kokopelli's failure to perform its duties, and that, even if the floor mat was owned by SFMDG, its maintenance was under Kokopelli's control. The essential facts in this case, therefore, are these: (1) an injury was caused by a dangerous condition on the SFMDG premises; (2) one insurer provided liability coverage for risks caused by the dangerous condition; and (3) another insurer provided liability coverage to the entity charged with preventing such risks from developing on the premises. In reviewing the primary policy risks and primary functions and the circumstances of this case, we find that the insurance policy covering the entity charged with preventing the risk is closer to the risk and therefore is the primary insurer. *See Redeemer Covenant Church of Brooklyn Park v. Church Mut. Ins. Co.*, 567 N.W.2d 71, 80–81 (Minn. Ct.App.1997) (determining that pastor's professional liability insurer was closer to the risk that pastor would cause harm to persons he was counseling, as compared to church's comprehensive general liability policy, which provided general coverage for occurrences of many types). Therefore, the trial court was correct in determining that Farmers was the primary insurer in this case.

**Notice to Farmers**

{12} Farmers argues that it was not given a reasonable opportunity to be involved in the settlement negotiations with Woodruff, and therefore, State Farm was not entitled to indemnification in the amount of $250,000. The trial court found that State Farm notified Kokopelli of Woodruff's claim in August 1998, notified Farmers' agent of the claim in May 1999, and notified Farmers of the claim directly in April 2000. The trial court found that all of the notifications were made prior to final settlement of Woodruff's claim and constituted adequate notice to Farmers. There is no suggestion that Farmers is challenging the factual basis for the finding of adequate notice, including the attempts that were made with regard to notice to Farmers. Instead, Farmers is claiming that the factual finding that the notice was adequate was erroneous because the late direct notice to Farmers deprived it of a reasonable opportunity to be involved in the settlement proceedings. We review findings of fact made by

the trial court to determine if they are supported by substantial evidence. *See Griffin v. Guadalupe Med. Ctr.*, 1997–NMCA–012, ¶ 22, 123 N.M. 60, 933 P.2d 859.

{13} Here, State Farm provided notice of Woodruff's claim to Kokopelli's representative, Simon, in May 1999. At that time, Simon was uncooperative when State Farm suggested he report the claim to Kokopelli's insurer and insisted that only State Farm was responsible for the claim. When State Farm was informed of the name of Kokopelli's insurer in May 1999, it immediately notified Farmers' agent, Northern New Mexico Insurance Agency. State Farm requested that Farmers' agent forward State Farm's letter of notification to Farmers "so that [Farmers] can set up a claim for Kokopelli." In June 1999, Farmers' agent told State Farm's agent that he had spoken with Simon and had been instructed not to report the claim to Farmers. State Farm's agent responded that he was not sure that Farmers' agent could refuse to report the claim, and that he believed that Farmers' agent "needed to report the claim." Despite this, Farmers' agent failed to contact Farmers about the claim. On April 10, 2000, State Farm sent direct notice to Farmers, including extensive detail about Woodruff's accident and injuries, and asking for "immediate funds to indemnify" Kokopelli for its negligence. On April 26, 2000, State Farm sent another letter to Farmers asking to know immediately how much Farmers would contribute toward settlement and requesting a response by April 28. Farmers responded with two letters, on April 27 and May 4, 2000, stating that it was investigating the claim and did not understand why State Farm believed Farmers to have any liability in the case. State Farm settled with Woodruff on May 2, 2000. On May 10, 2000, State Farm informed Farmers that it had settled the claim.

{14} There was substantial evidence to support the trial court's finding that notice to Farmers was adequate. For example, State Farm gave notice to Farmers' agent approximately one year prior to settlement. *See Jackson Nat'l Life Ins. Co. v. Receconi*, 113 N.M. 403, 412, 827 P.2d 118, 127 (1992) (determining that notice to the agent of a company constitutes notice to the company even when the agent does not actually pass on the information to the company). Although Farmers argues that State Farm cannot rely on notice to its agent because he was told by Farmers' agent that the claim would not be forwarded to Farmers, the last communication between the two agents involved State Farm's agent informing Farmers' agent that he believed that the claim needed to be reported to Farmers. In addition to notice to Farmers' agent, Farmers was directly notified of the full details of the case, including details of the settlement negotiations, over three weeks prior to settlement. In response, Farmers stated only that it was investigating the claim. Farmers engaged in only limited investigation of the claim, and made no other efforts to be involved in the settlement negotiations or to have the settlement postponed. Based on this substantial evidence, we reject Farmers' argument that it had inadequate notice.

### Reasonableness of Settlement

{15} Farmers argues that the trial court erred in concluding that it should reimburse State Farm in the amount of $250,000. Farmers argues that it should not be required to pay any amount to State Farm, particularly because of its claim that it had inadequate notice and could not participate in the proceedings. As discussed above, Farmers had adequate notice of the claim, but chose not to participate in defense of its insured or in settlement negotiations. However, although Farmers did not participate in the settlement of the claim, it was not precluded from arguing that the settlement amount of $375,000 was unreasonable. *See Am. Gen. Fire and Cas. Co. v. Progressive Cas. Co.*, 110 N.M. 741, 746, 799 P.2d 1113, 1118 (1990). The trial court agreed with Farmers that the settlement amount was unreasonable, and found that State Farm was entitled to only $250,000, out of the total $375,000 settlement, because a reasonable settlement should not have exceeded $250,000. This finding is supported by substantial evidence which is binding on us on appeal. *See Griffin*, 1997–NMCA–012, ¶ 22, 123 N.M. 60, 933 P.2d 859. The trial court found that Farmers was the primary insurer

for the claim, and therefore Farmers is bound by the settlement reached between State Farm and Woodruff. *See Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 59, 123 N.M. 752, 945 P.2d 970.

{16} The trial court based the amount of a reasonable settlement on various facts, including medical bills incurred by Woodruff of almost $107,000, pain and suffering and significant decrease in the quality of life suffered by Woodruff, a tentative settlement agreement in October 1999 of $170,000 that coincided, however, with the significant worsening of Woodruff's injuries, and the ultimate placement of Woodruff in a nursing home. The trial court also considered the facts that the claim had not gone to litigation, the investigation of the claim was not sufficiently thorough as to Kokopelli's employees, there was a possibility that a defense would have been provided by Kokopelli's employees, and there was a possibility of assessing comparative fault against Woodruff. Farmers does not challenge any of these determinations, but instead argues only that it should not be liable for any amount. Essentially, Farmers is arguing that the entire settlement was unreasonable. Farmers does not point to any evidence to support this argument. In any event, the evidence cited above supports the trial court's determination of the amount of a reasonable settlement, and we affirm the trial court's decision on this issue.

### Prejudgment Interest

{17} After trial, State Farm filed a motion for prejudgment interest, which was granted by the trial court. An award of prejudgment interest is reviewed under an abuse of discretion standard. *See* NMSA 1978, § 56–8–4(B) (1993) (allowing the district court to exercise its discretion in awarding prejudgment interest); *DeLisle v. Avallone*, 117 N.M. 602, 609, 874 P.2d 1266, 1273 (Ct.App.1994) (stating that a trial court's decision on prejudgment interest will stand absent a showing that the decision is contrary to all logic and reason). The trial court, in determining whether prejudgment interest should be awarded, may consider whether State Farm caused unreasonable delay in adjudication of its claims and whether Farmers had previously made a timely and reasonable offer of settlement to State Farm. *See* § 56–8–4(B)(1)(2) (stating that the trial court, in determining prejudgment interest, may consider whether the plaintiff unreasonably delayed adjudication and whether the defendant made a settlement offer to the plaintiff).

{18} Farmers argues that State Farm delayed in responding to discovery requests, which resulted in a need to file a motion to compel production of documents. Farmers also claims that State Farm made it clear that it would not accept any offer less than its full demand. State Farm argues that it attempted to resolve the case for approximately six months prior to filing suit. State Farm also argues that it objected to the production of its claim file, which it had a right to do, and that Farmers made no effort to pursue the matter until almost a year later. Finally, State Farm argues that the onus under Section 56–8–4 is on Farmers to make an offer of settlement, and one was never made. It was up to the trial court to resolve the issue, and determine whether prejudgment interest should be awarded. There is nothing to suggest that the trial court abused its discretion in this regard. We affirm the decision to award prejudgment interest.

### CONCLUSION

{19} Based on the foregoing, we affirm the trial court's decision.

{20} **IT IS SO ORDERED.**

CASTILLO and VIGIL, JJ., concur.