This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**CITY OF ALAMOGORDO,**

     Applicant-Appellee,

and

**TULAROSA COMMUNITY DITCH CORPORATION, DAN C. ABERCROMBIE, ELSIE I. BAILEY, LAYMON HIGHTOWER, deceased, and ALLEN (BILL) TRAMMELL,**

     Protestants-Appellants,

v.                              **NO. 28,643**

**NEW MEXICO STATE ENGINEER, JOHN R. D'ANTONIO, JR.,**

     Interested Party-Appellee,

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Stein & Brockmann, P.A.
James C. Brockmann
Jay F. Stein
Seth R. Fullerton
Santa Fe, NM

Katherine W. Hall, P.C.
Katherine W. Hall
Santa Fe, NM

City of Alamogordo
Steve Thies, City Attorney
Alamogordo, NM

for Applicant-Appellee

Peter Thomas White
Santa Fe, NM

for Protestants-Appellants

DL Sanders, Chief Counsel
Hilary Lamberton, Special Assistant Attorneys General
Office of the State Engineer
Santa Fe, NM

William D. Teel, Special Assistant Attorney General
Albuquerque, NM

for Appellees John R. D'Antonio, Jr. and New Mexico State Engineer

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

The Tularosa Community Ditch Corporation, Dan C. Abercrombie, Elsie I. Bailey, Laymon Hightower (deceased), and Allen (Bill) Trammell (Protestants) appeal the decision of the district court approving a permit for the City of Alamogordo (Alamogordo) to appropriate brackish groundwater within the Tularosa Underground Water Basin (Tularosa Basin). At issue on appeal is whether the district court was justified in its ruling that (1) the appropriation is not detrimental to public welfare and

will not adversely impact existing water rights, (2) there are appropriable water rights remaining in the Tularosa Basin, (3) the permit adequately limits the total amount of water that Alamogordo may appropriate, and (4) the appropriation is not contrary to the conservation of water. We find substantial evidence in support of the district court's ruling and affirm its decision to approve Alamogordo's permit to divert brackish water from the Tularosa Basin.

**BACKGROUND**

In September 2000 Alamogordo filed applications for wells T-3825 through T-3825-S-9 seeking to divert a combined total not to exceed 13,450 acre-feet per year (afy) of brackish water from the Tularosa Basin. These wells are located at the "Snake Tank Well Field" north of the Village of Tularosa and outside of the Tularosa Underground Water Basin Administrative Criteria (TUWBAC) area. The water diverted from these wells will be treated by desalination to produce potable water to be transported via pipeline for beneficial use in Alamogordo's water service area.

The Office of the State Engineer initially issued a permit for the T-3825 wells to allow diversions of up to 3,000 afy, with a provision that up to 4,500 afy could be diverted in any one year, provided that the total diversion over any five-year period did not exceed 15,000 acre-feet. Protestants, along with several other parties, appealed the decision of the OSE to the district court. The other parties ultimately

withdrew their protests after entering into settlement agreements with Alamogordo. Alamogordo itself was also dissatisfied with the permit issued by the OSE and submitted its own appeal to the district court. Alamogordo and the OSE ultimately entered into a settlement agreement resolving their disputes, and a revised permit was issued.

The revised permit would allow Alamogordo to divert up to 4,000 afy from the T-3825 wells with a provision that up to 5,000 afy may be diverted in any one year, provided that the total diversion over any five-year period did not exceed 20,000 acre-feet. The revised permit contains twelve conditions of approval, including requirements that groundwater levels and quality be monitored and reported to the OSE annually and that diversions under the permit be suspended if there are indications that valid senior water rights will likely be impaired or that water levels will fall beneath those acceptable under the TUWBAC. After a de novo review, the district court ordered that the revised permit be approved based on its findings and conclusions that there was unappropriated water within the Tularosa Basin, that existing water rights would not be impaired by granting the permit, and that granting the permit would not be contrary to conservation or public welfare.

**STANDARD OF REVIEW**

4

The district court entered 136 findings of fact and twenty-one conclusions of law in support of its order approving the revised permit. Although Protestants argue for a de novo review, the issues raised on appeal involve only evidentiary challenges. Thus we apply a substantial evidence standard of review. *See Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 25, 146 N.M. 473, 212 P.3d 361 (applying a substantial evidence standard where no legal questions remain). "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990). In reviewing a substantial evidence claim, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (filed 1996). "Additionally we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Id.* "When the trial court's findings of fact are supported by substantial evidence, . . . refusal to make contrary findings is not error." *Griffin v. Guadalupe Med. Ctr., Inc.*, 1997-NMCA-012, ¶ 22, 123 N.M. 60, 933 P.2d 859.

**DISCUSSION**

**I.     Substantial Evidence Supports the District Court's Conclusion That Approval of the Revised Permit is Not Detrimental to Public Welfare and Will Not Adversely Impact Existing Water Rights**

Protestants argue that approval of the revised permit is detrimental to public welfare and will impair existing water rights for several reasons. First, Protestants argue that approving the revised permit may conflict with the desires of existing water rights holders wishing to maintain current supplies. Protestants also argue that the criteria found in TUWBAC provide an insufficient basis for an appropriation when a local jurisdiction has adopted a separate water policy. Specifically, TUWBAC relies on a forty-year water-planning horizon and allows annual drawdowns of up to two-and-a-half feet per year, while Otero County's Comprehensive Plan anticipates expanding to a sixty-year water planning horizon and encourages a reduction in annual drawdown to no more than one foot per year. Protestants assert that instead of relying on the TUWBAC criteria, the district court should have adopted the criteria from the Otero County Comprehensive Plan to guide its analysis.

Several of the district court's findings support the conclusion that approval of the revised permit would not impair existing water rights. The district court found that the Tularosa Community Ditch Association's water rights would not be impaired or reduced. The district court relied on evidence that the Tularosa Community Ditch Association's point of diversion was "located within the mountain block [, which] means that the surface water supply to the ditch, which is derived from precipitation run-off and mountain block aquifer discharge upgradient of the basin fill aquifer, will

6

not be impaired by pumping of water in the basin fill." The Protestants do not challenge any of the evidence supporting this finding.

With respect to well impairment, the district court considered the effects of the revised permit based on the results of the OSE's groundwater flow model. It noted that this model was the most conservative of the three models currently available, in that it likely over-estimates drawdowns and under-estimates recharge. The court noted that the question of impairment may depend on several factors, including the age and depth of a well, its construction characteristics, and the amount of time it would take for the effects of Alamogordo's pumping to reach it. Taking the groundwater model and these factors into consideration, the district court found that approval of the revised permit would not result in impairment of existing rights. It also found that if any signs of impairment were to develop, the conditions of approval for the revised permit would allow the OSE to take action to protect senior rights. Protestants argue that the district court should have accepted or credited other evidence on this issue. Again, we do not reweigh evidence or substitute our own judgment for that of the fact finder. *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12.

Furthermore, Protestants' assertion that the revised permit is inconsistent with public welfare as described by the Otero County Comprehensive Plan is somewhat

misplaced. Protestants fail to note that the County's plan itself contains statements supporting the revised permit. Specifically, the plan endorses "desalinating the abundant Tularosa Basin Aquifer." It also states that the County supports the efforts of the OSE and "utilizes its guidelines in making decisions on water use within the County." Finally, we note that approval of the revised permit in no way prevents Otero County from following through with its objectives to "continue to work with State authorities to better understand the aquifer" and to promote water conservation and aquifer management to reduce aquifer depletion rates.

Even assuming that inconsistencies exist, Protestants' evidentiary challenge falls short. The district court recognized that a regional water plan may consider the public welfare of a region, but that the OSE must consider the welfare of the State as a whole. It found that approval of the permit to appropriate brackish groundwater in order to convert it to potable water creates a benefit to the public welfare of New Mexico by reducing demand on existing fresh water supplies. Protestants do not challenge these findings. Absent a more substantial challenge, we cannot conclude that the district court's findings in this area were unsupported. *See* Rule 12-213(A)(4) NMRA.

**II.     Substantial Evidence Supports the District Court's Conclusion That There are Unappropriated Water Rights Sufficient to Satisfy the Appropriation Under the Revised Permit**

8

Protestants' argument that the district court erred in finding that there is unappropriated water within the Tularosa Basin is unfounded. It relies on assertions that the district court lacked authority to make such a determination because the basin is rechargeable and the appropriation is more than de minimis. Even assuming that Protestants present a valid legal distinction based on whether or not a basin is rechargeable, Protestants cannot demonstrate that there is no support for the district court's findings of fact that there is appropriable water within the Tularosa Basin.

The district court relied on recent measurements showing that water levels in the Tularosa Basin have not declined to the extent previously predicted. Furthermore, it found that groundwater levels actually rose between 1982, when TUWBAC was initially implemented, and 1995, and that as recently as 2004 water levels still remained higher than those measured in 1982. These findings tending to show the availability of appropriable water are supported by the testimony of Eric Keyes and John Shomaker. Protestants do not challenge these findings, and even assuming that these facts were controverted, we cannot reweigh the evidence on appeal. *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12.

**III. The District Court's Approval Properly Limits Alamogordo's Appropriation**

Protestants argue that "[t]he most significant error in the Revised Permit and condition [nine] in particular is that it does not . . . quantify or limit Alamogordo's

9

total diversion of water from all surface and ground water sources of supply." Condition nine expresses an expectation that Alamogordo's annual water usage will not exceed 165 gallons per capita per day (gpcpd). Protestants argue that, rather than stating an "expectation," this condition should be phrased as an absolute limit. Otherwise, Protestants assert Alamogordo could pump water in excess of its needs from the Snake Tank Well Field, even in years when it could otherwise satisfy all its needs from other sources.

We find evidence in support of the district court's findings that the revised permit is reasonably limited. Protestants do not acknowledge that condition nine also requires Alamogordo to "utilize the highest and best technology available to ensure ongoing conservation of water to the maximum extent practical." Protestants also fail to acknowledge the limit imposed by condition two of the revised permit:

> The total annual combined diversion of groundwater from Well Nos. T-3825 thru T-3825-S-9 under this permit shall not exceed 4,000 afy, except that the City may increase the total annual combined diversion of groundwater from said wells during any calendar year up to 5,000 acre-feet, provided that the sum of annual diversions for any consecutive five-year period does not exceed 20,000 acre-feet.

Contrary to Protestants' argument, the district court did in fact find adequate safeguards to ensure that Alamogordo actively conserves water by not-over pumping during years where its other water sources produce strong yields. Specifically, in addition to the conditions in the permit, the district court found that Alamogordo has

10

undertaken significant water conservation measures in recent years by using reclaimed water for all of its public green spaces, by passing conservation ordinances that include restrictions on outdoor watering and a rate system with tiered billing based on use, and by passing an ordinance establishing an emergency plan for heightened conservation measures in times of drought. Finally, based on the expert testimony of Len Stokes, the district court found that Alamogordo would "first use its high quality, limited surface water sources, then phase-in use of its existing lesser quality groundwater sources, and lastly, would phase-in use of the mineralized brackish water from the proposed T-3825 well field." Protestants do not directly challenge any evidence supporting these findings, which tend to show that water under the revised permit will not only be used judiciously, but also only as the last of three sources.

**IV.    The District Court's Findings That the Revised Permit Will Not be Contrary to Conservation are Supported by Substantial Evidence**

Protestants argue that Alamogordo's use of 165 gpcpd in order to project its future water needs is excessive. Protestants argue that Alamogordo's water needs should have instead been projected based on a maximum usage of 143 gpcpd. Protestants assert that this is more reasonable because from 2000-2005, Alamogordo consumed on average only 139 gpcpd.

While Protestants argue that the district court could have imposed a lower usage rate, they fail to acknowledge evidence supporting a usage rate of 165 gpcpd. For

11

example, the district court reviewed the gpcpd consumption of thirteen other southwestern cities. Alamogordo's benchmark of 165 gpcpd is lower than eight of the other cities, and the field of thirteen is bookended by El Paso, Texas, at the low end consuming 142.6 gpcpd, and Scottsdale, Arizona, at the high end consuming 322.8 gpcpd. The court also noted that 165 gpcpd compared favorably with the Village of Tularosa's 241 gpcpd, Holloman Air Force Base's 300 gpcpd, and Las Cruces' 230 gpcpd (with a goal of 180 gpcpd). Based on this evidence, the district court found that use of 165 gpcpd was reasonable and consistent with usage by other southwestern cities.

Based on reports and testimony by Jim Sizemore about water usage in other cities, the district court found that 165 gpcpd was an effective limit to impose on the city as it grows and that converting brackish water to potable water to meet this demand promotes conservation of potable water. Although Protestants' push for a lower gpcpd is understandable, we cannot conclude that use of the 165 gpcpd standard was unreasonable in light of the evidence of water usage in other cities and Alamogordo's notable conservation efforts.

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the district court.

**IT IS SO ORDERED.**

_____

             **MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. Fry, Chief Judge**

_____

**LINDA M. VANZI, Judge**